SEABOARD AIR LINE RAILWAY COMPANY, a corporation, *Appellant,* vs. TAMPA SOUTHERN RAILROAD COMPANY, a corporation, *Appellee.*

Division B.

Opinion filed May 6, 1931.

*John B. Singletary,* of Bradenton, for Appellant;
*John H. Carter,* of Marianna, and *Kelly* and *Shaw,* of Tampa, for Appellees.

DAVIS, J.—In the Court below a Bill was filed on the Chancery side of the Circuit Court of Sarasota County, Florida, seeking an injunction against the Tampa Southern Railroad Company, from further occupying or attempting to occupy that portion of the right of way and tracks of the Seaboard Air Line Railway Company, designated as Hog Creek Spur, in the City of Sarasota, County of Sarasota, State of Florida, said right of way and tracks being more particularly described in the Bill, and also seeking to restrain said Tampa Southern Railroad Company, its agents, servants, employees and attorney's and each and all of them from proceeding with the construction of its line of road over and across said lands described in the bill of complaint, or across the right of way or across the side tracks or spur tracks of the said Seaboard Air Line Railway Company, known as Hog Creek Spur, until the further order of the Court.

The Court made an order under date of May 29th, 1926, enjoining and restraining the said Tampa Southern Railroad Company, as sought in the Bill and a formal writ of injunction was issued by the Clerk pursuant to the Court's order, out of said Circuit Court, and in said cause and was served upon the defendant, Tampa Southern Railroad Company, on the 29th day of May, 1926.

On the 4th day of September, 1926, a motion to dissolve said injunction was filed by Tampa Southern Railroad Company, and on the same day an affidavit in support of the motion to dissolve was also filed, and on the 11th day of September, 1926, a supplemental affidavit in support of motion to dissolve the injunction was filed by said defendant, Tampa Southern Railroad Company.

No hearing was ever had upon the motion to dissolve, and no further action or proceeding was had in said case

and the said injunctional order and decree of the court remained in full force and effect, on the 5th and 6th days of May, 1928, when the defendant, Tampa Southern Railroad Company so it is alleged, entered upon the premises, tore its way through Hog Creek Spur and laid its track across the same and took up and removed certain spur tracks around, connected with and being a part of said Hog Creek Spur.

On the 8th day of May, 1928, the complainant, Seaboard Air Line Railway Company, filed before the Honorable Paul C. Albritton, Judge of the Circuit Court of Sarasota County, Florida, its petition for a rule on the defendant, Tampa Southern Railway Company, to show cause why it should not be held in contempt for its disregard of the injunctional order and decree of the court of May 29, 1926, and its disobedience thereto, and thereof, in extending its track upon and across the right of way and the spur track known as Hog Creek Spur, referred to and particularly described in complainant's bill of complaint in said cause.

On the 8th day of May, 1928, an order to show cause why it should not be held in contempt of court for its violation of the injunctional order and decree was issued by the Circuit Court of Sarasota County, Florida, to the said Tampa Southern Railroad Company, as prayed by the complainant, Seaboard Air Line Railway Company in its petition to the court for a rule on said defendant. Said order was on the same day served upon defendant, and on the 10th day of May, 1928, the defendant filed its answer to said rule, and on the 11th day of May, 1928, the court heard the testimony of the respective parties, complainant and defendant, and on the 12th day of June, 1928, the court made its order and decree that the rule to show

cause be discharged and in the same order and decree further ordered, adjudged and decreed that the bill in said cause be dismissed at the complainant's costs.

From this order and decree entered on June 13th, 1928, the complainant in the court below entered its appeal.

At the outset it is suggested by the appellee here that the order of the Circuit Court discharging the contempt rule is not reviewable, because a contempt proceeding is primarily for the protection of the court and not of the parties to a cause, contempts of court being generally regarded as criminal in character. Thalheim v. Camp Bros. Phos. Co., 48 Fla. 190, 37 So. 523; Smith v. Whitfield, 38, Fla. 211, 20 So. 1012.

But not all contempts of court are criminal in character and it was generally acknowledged long before the Constitution of the United States was adopted that a distinction existed between punishment of a contemner for violating the dignity of the court, and a violation of the remedial part of a court's order necessary to secure the rights of an injured suitor. 4 Blackstone Com. 285, 397, 398; 2 Hawkins Pleas of the Crown, 6th Ed. (1787) 553.

Thus it was stated in the well known case of Gompers v. Buck's Stove & Range Co., 221 U. S. 418; 55 L. Ed. 797; 34 L. R. A. (N.S.) 874, 31 Sup. Ct. Rep. 492:

"Contempts are neither wholly civil nor altogether criminal. And it may not always be easy to classify a particular act as belonging to either one of these two classes. It may partake of the characteristics of both' * * * It is not the fact of punishment, but rather its character and purpose, that often serve to distinguish between the two classes of cases. If it is for civil contempt the punishment is remedial, and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of

the Court. * * * There is another important difference. Proceedings for civil contempt are between the original parties, and are instituted and tried as a part of the main cause. But, on the other hand, proceedings at law for criminal contempt are between the public and the defendant, and are not a part of the original cause. * * * Inasmuch, therefore, as proceedings for civil contempt are a part of the original cause, the weight of the authority is to the effect that they should be entitled therein. * * * We have already shown that in both classes of cases there must be allegation and proof that the defendant was guilty of contempt, and a prayer that he be punished. The classification, then, depends upon the question as to whether the punishment is punitive, in vindication of the Court's authority, or whether it is remedial, by way of a co-ercive imprisonment, or a· compensatory fine, payable to the complainant. Bearing these distinctions in mind the prayer of the petition is significant and determinative.''

In another case it was said by the United States Court (Bessetté v. Conkey, 194 U. S. 324; 48 L. Ed. 997; 24 Sup. Ct. 665):

''Manifestly, if one inside of a court room disturbs the order of proceedings, or is guilty of personal misconduct in the presence of the court, such action may properly be regarded as a contempt of court; yet it is not misconduct in which any individual suitor is specially interested. It is more like an ordinary crime which affects the public at large, and the criminal nature of the act is the dominant feature. On the other hand, if, in the progress of a suit, a party is ordered by the court to abstain from some action which is injurious to the rights of the adverse party, and he disobeys that order, he may also be guilty of contempt, but the personal injury to the party in whose favor the court has made the order gives a remedial character to

the contempt proceeding. The punishment is to secure to the adverse party the right which the Court has awarded to him. He is the one primarily interested, and if it should turn out, on appeal from the final decree in the case, that the original order was erroneous, there would, in most cases, be great propriety in setting aside the punishment which was imposed for disobeying an order to which the adverse party was not entitled. It may not be always easy to classify a particular act as belonging to either one of these two classes. It may partake of the characteristics of both. A significant and generally determinative feature is that the act is by one party to a suit in disobedience of a special order made in behalf of the other. Yet sometimes the disobedience may be of such a character and in such a manner as to indicate a contempt of the court rather than a disregard of the rights of the adverse party.''

Tested by the rule laid down in the foregoing cases it appears that in the case at bar the proceedings were for a civil contempt and were properly entitled as between the parties to the cause.

The prayer of complainant's petition is that the defendant ''be ruled and adjudged in contempt of court for the violation of the court's order and decree as herein set forth, and to restore the property and premises to its original status and shape as the same was before the violation by it of the injunction.'' Proceedings on such petition were contemplated as a part of the equity suit and the hearing had conformed to equity practice. Any decree rendered thereon was accordingly appealable as an interlocutory order under our statute which expressly permits appeals to be taken from interlocutory orders in equity cases. (Section 4961, C. G. L. 3169, R. G. S.). This appeal

taken is from the final decree and all interlocutory orders and rulings made prior thereto.

So we pass to a consideration of the appeal on its merits in so far as it involves the proposition of the alleged contempt of court, from the consequences of which the appellee was discharged.

And if, upon the examination of the record, it should appear that the defendant was in fact guilty of the contempt charged, there would be no more important duty than to give such direction to the court below as would serve to vindicate its jurisdiction and authority to enforce its order and to redress acts of disobedience to them.

For while the power to punish for contempt of a civil or criminal nature is to be sparingly used, it is a necessary and integral part of the judicial power, and is absolutely essential to the performance of the duties imposed by law upon courts of equity. Without it, such courts are mere boards of arbitration, whose judgments and decrees are only advisory.

If a party can make himself a judge of the validity of orders which have been issued for the protection of property rights, and by his own act of disobedience can set them aside, then are the courts impotent and what the Constitution of the State ordains as the judicial power becomes a mere mockery.

This power has uniformly been held indispensable to enable the court to enforce its judgments and to execute its orders necessary to the due administration of law and the protection of the rights of citizens.

Where a defendant has interfered with property in violation of an injunction, he may properly be required to restore the property interfered with to its former condition, or the court may make an alternative order giving

the defendant the chance to make restitution before passing sentence of fine or imprisonment.

A party proceeded against for disobedience of an injunction is never allowed to allege as a defense for his misconduct that the court erred in its judgment in granting the injunction or in refusing to dissolve it, and this is so even though it may seem clear that the court did improperly grant the injunction.

Where the court had jurisdiction, the fact that an injunction or restraining order is merely erroneous, or was improvidently granted, or irregularly obtained, or the bill without equity and subject to dismissal for that reason, is no excuse for violating it. This rule applies with special force to a prosecution for contempt instituted for the purpose of preserving property *in statu quo* to enforce the authority of the court in the administration of justice between litigants.

An injunction or restraining order must be obeyed until vacated or modified by the court awarding it, or by superior authority, or until the order or decree which granted it has been reversed on appeal, no matter how unreasonable and unjust the injunction may be in its terms, and no matter how flagrantly the rules of equity practice have been violated by the court in ordering it to issue.

It is furthermore true when an injunction *pendente lite* is obtained to preserve the status of property rights, which if the acts enjoined are committed will be destroyed or lost, the party obtaining such an injunction has the legal right to have it enforced by the court so long as it is in force, and the Chancellor has both the power and the duty to see that it is not disregarded by the party against which it was issued.

Such an injunction should be obeyed as such as long as

it is in force, and the court should not permit a party charged with violating it to say in defense that the equities of the case were with the violator, and that the court was wrong in entering the injunction in the first place.

Neither will a strict or narrow construction be placed on the terms of an injunction for the purpose of permitting a defense by one charged with violating it when it is plain that he must have known when he did so, that it was the intention of the court to restrain the acts done, whether such acts were as definitely described in the injunction as they should have been, or not. In cases of doubt in such matters, it is the duty of the defendant to apply to the court for such modification of the language of the injunctive order as will remove from it any ambiguity in its meaning, or indefiniteness in it as to description of the property intended to be protected.

And the mere fact that on final decree the bill of complaint is dismissed and the defendant adjudged to have been entitled to a decree in his favor, will not operate to discharge a defendant who has violated an injunction *pendente lite* prior to such dismissal. When an interlocutory injunction has been disregarded by a defendant, it is the duty of the court to retain jurisdiction of the cause for the purpose of vindicating its authority with respect to its lawful orders. This is true because though a bill be dismissed and an injunction issued thereon ordered dissolved on final hearing by the Circuit Court, the jurisdiction of this court may be thereafter invoked to continue the injunction in force by way of supersedeas pending appeal. The rights of property intended to be protected in an existing status by an interlocutory injunction once granted should not be allowed to be thwarted merely because in the course of the proceeding, the

court below reaches the conclusion that the suit itself is without merit.

The Chancellor heard the issue on its merits. Evidence going into every detail was taken, after which he discharged the contempt rule. The Chancellor also at the same time dismissed the bill itself. Appellant contends that the court discharged such contempt rule on the theory that because the bill was dismissed on its merits, the defendant should not have been held in contempt because the injunction violated was thereby found to have been improvident. If the court dismissed the rule solely for this reason it was in error and we would not hesitate to reverse and remand the cause for that reason if it so appeared.

But the record does not show upon what theory the rule was discharged. In the absence of any showing, we must presume it was for a proper reason. There was a sharp conflict between the parties as to the facts. The defendant made the contention that the City of Sarasota and not it did the offending acts. Defendant also contended that the injunction order had been dissolved by stipulation of counsel for the dismissal of the bill, but if such was a fact, the record does not support it.

The court by discharging the rule has determined that no criminal contempt against its dignity as distinguished from violation of the rights of the parties has been committed. It has also determined that for some good reason, which we must presume existed to warrant such determination, the defendant was not guilty of doing the acts which are alleged to have been done in violation of the injunction order. There is a conflict in the evidence as to whether the City of Sarasota or the Tampa Southern Railway Company is the perpetrator of what was

done, and while we might feel strongly inclined to believe that the defendant was not free from at least a collusive connection with the acts done, the evidence is not so clear on this point as to warrant us in reversing the findings of fact by the Chancellor to the contrary.

The merits of the bill seem to have been lost sight of in the briefs and argument regarding the contempt. It has not been clearly pointed out to us that the bill ought not to have been dismissed on its merits as was done by the Court at the contempt hearing.

The decrees appealed from are therefore affirmed.

WHITFIELD, P.J., AND TERRELL, J., concur.

BUFORD, C.J., AND ELLIS AND BROWN, J.J., concur in the opinion and judgment.