86 So.2d 816 (1956)
NATIONAL EXTERMINATORS, Inc., a Florida corporation, Theodore Bramson and Corinne Bramson, Appellants,
v.
TRULY NOLEN, Inc., a Florida corporation, Appellee.
Supreme Court of Florida. Division A.
April 11, 1956.
Morehead, Forrest, Gotthardt & Orr, and Melvin N. Greenberg, Miami, for appellants.
Bernard B. Weksler, Miami, and Victor M. Cawthon, Tallahassee, for appellee.
*817 TERRELL, Justice.
August 9, 1950, National Exterminators, Inc., Theodore Bramson and Corinne Bramson, hereinafter referred to as "National," sold to T.N. Insecticides, Inc., certain fumigating equipment and supplies. August 9, 1950, National Termite Control Company, Inc., sold its fumigation business in Dade County to T.N. Insecticides, Inc. December 1, 1951, T.N. Insecticides, Inc., transferred all its right, title and interest in the aforementioned agreements to appellee, Truly Nolen, Inc., hereinafter referred to as "Nolen."
August 11, 1954, Nolen filed complaint in the Circuit Court of Dade County praying for injunction and other relief against National for breach of the agreements of August 9, recited in the preceding paragraph. August 24, 1954, the court entered the following injunctive order:
"Ordered, adjudged and decreed: That the Defendant, National Exterminators, Inc., and its agents, servants and employees, and each and every of them, be and they hereby are enjoined and restrained from in any manner continuing, engaging, or being interested or employed in, either directly or indirectly, in conducting a fumigation (otherwise known as `gassing') business and soliciting or interfering with fumigation customers or prospective customers of the plaintiff within Miami, Florida, Miami Beach, Florida, or any place within a radius of ten (10) miles therefrom, and that this injunction pendente lite be in full force and effect until the final hearing and determination of this cause."
Answer was seasonably filed by National and August 31, 1954, stipulation for injunction was entered into by Nolen and National pursuant to which a final decree imposing permanent injunction was entered. June 30, 1955, motion for rule to show cause why National should not be held in contempt for violation of the decree of August 31, 1954, was filed by Nolen. Order to show cause was duly entered, to which National filed its answer. At a hearing on the merits, the chancellor entered the following contempt order:
"Ordered, adjudged and decreed that the said National Exterminators, Inc., a Florida corporation, Theodore Bramson, and Corinne Bramson are guilty of contempt of court in violating the Final Decree of August 31, 1955, and it is further
"Ordered, adjudged and decreed that in lieu of a commitment or a punitive or compensatory fine or other contempt measures, the period of injunction is extended for a period of one (1) year from August 9, 1955, to and including August 9, 1956, with all other terms and provisions of said Final Decree to remain unaltered, and it is further
"Ordered, adjudged and decreed that this court shall retain jurisdiction of this cause and the parties."
July 26, 1955, the court entered an order modifying this contempt order of July 12, 1955, as follows:
"Ordered, adjudged and decreed that National Exterminators, Inc., a Florida corporation, Theodore Bramson and Corinne Bramson are guilty of contempt of this court in violating the Final Decree of August 31, 1954, as above set forth; and it is thereupon further
"Ordered, adjudged and decreed that the period of injunction set forth in the aforementioned Final Decree of August 31, 1954, go into effect again April 23, 1956 and until July 9, 1956, in accordance with the terms and provisions of said Final Decree; it is further
"Ordered, adjudged and decreed that the defendants pay to Bernard Weksler, attorney for the plaintiff, the sum of $750.00 as and for attorney's fee and that the defendants pay to the Registry of the Court the sum of $1,000.00 to be held in the Registry of the Court pending the further order of this court. Both of the aforementioned *818 sums are to be paid within five days of the date hereof. Except as here stated the order of July 12, 1955, remains unchanged and is effective * * *."
The first point with which we are confronted is whether or not the evidence was sufficient to adjudge National guilty of contempt for violating the final decree of August 31, 1954.
It is contended this question should have a negative answer because (1) none of the acts and conduct of National constituted a violation of the injunction of August 31, 1954; (2) even if some of the acts and conduct of National may be construed to be in violation of the injunction of August 31, 1954, there was no "intent" on the part of National to violate the injunction. It appears that appellant was enjoined from "in any manner continuing, engaging, or being interested or employed in, either directly or indirectly, in conducting a fumigation (otherwise known as `gassing') business and soliciting or interfering with fumigation customers or prospective customers of the plaintiff within Miami, Florida, Miami Beach, Florida, or any place within a radius of ten miles therefrom."
The court based his contempt order on the fact (1) that appellant National listed itself in a Miami telephone book as one doing termite proofing in such manner that ten percent of the calls elicited by the advertisement concerned fumigation; (2) appellant responded to fumigation inquiries by submitting bids and estimates on the work and advising that it could do it after August 9; (3) appellant submitted bids on fumigation work knowing that appellee was bidding for the same work. These and other findings which we do not detail are ample to show a violation of the injunctive order. In view of sec. 38.22, Florida Statutes, F.S.A.; Ex Parte Earman, 85 Fla. 297, 95 So. 755, 31 A.L.R. 1226; Fernandez v. Kellner, Fla., 55 So.2d 793; Seaboard Air Line R. Co. v. Tampa Southern R. Co., 101 Fla. 468, 134 So. 529; McComb v. Jacksonville Paper Co., 336 U.S. 187, 69 S.Ct. 497, 93 L.Ed. 599, the court was warranted in imposing the contempt order. We think these cases conclude the question of the court's power to adjudicate the sufficiency of the evidence, as well as whether or not there was intent to violate the injunctive order. The statute and the cited cases vest the court with a liberal discretion in the matter.
The second question is in resistance to that part of the order of July 26, 1955, directing that the injunction set out in the final decree of August 31, 1954, go into effect again April 23, 1956, until July 9, 1956, and directing defendants to pay $750 attorney's fees to Nolen's counsel and to pay $1,000 punitive fine into the registry of the court.
Appellants charge error in this because (1) they say an expressed contract was the basis for the injunctive order and being so, it may not exceed the scope of the contract; (2) a court has inherent power by contempt to punish for violating an injunction but the punishment is limited to fine or imprisonment; (3) the injunction granted by the order of July 12, 1955, as modified by the order of July 26, 1955, did not comply with Section 64.01, F.S.A.
There is substance to the contention of appellants on this point. The terms of the contract were the predicate for the injunctive order and the parties were bound by them. They provided for a five year term commencing August 9, 1950. The effect of the contempt order was to extend the effective period of the contract into 1956. In our view the chancellor was devoid of power to do this, even as punishment for contempt. Giehler v. Ward, Fla., 77 So.2d 452.
We do think the trial court has power to punish for contempt by imposing a compensatory fine on the contemnor. The amount of such a fine may be measured by the damages, if any, suffered by the party in whose favor the injunction is granted. It is his burden, however, to prove the amount and extent of the damages which should be reasonably certain of measurement.
*819 It follows that the judgment appealed from is affirmed in part and reversed in part.
DREW, C.J., and HOBSON and THORNAL, JJ., concur.