BOOTH, Judge,
dissenting:
The trial court correctly ruled that the Department of Transportation (DOT) was guilty of civil contempt in failing to comply with this court’s order that it cease flooding appellee’s property. Civil contempt consists of the failure to perform an act ordered by a court, which is within the power of the party to perform, to the injury of another party for whose benefit the act is required.[1] The United States Supreme Court, in McComb v. Jacksonville Paper Company,[2] held that the purposes of civil contempt are two-fold: to coerce the derelict party into compliance with court orders, and to compensate the prevailing party for losses or damages caused by the other’s noncompliance.
The DOT does not deny that it has the present ability to comply either by restoring the original natural drainage[3] or by con *55 demning property needed as a drainage basin with the present system in operation. The DOT made a voluntary decision not to adopt either of these available solutions.
The excuse given for noncompliance with the order of this court is that the DOT seeks a solution for all the drainage problems in the entire area, a solution not limited to appellee’s property. All indications are that there will be numerous, time-consuming obstacles to overcome during the DOT’s search for this mythical perfect solution. Meanwhile, the private landowner must continue to bear the loss of use of his property, for it continues to serve as the terminus for the storm sewer system of the City of Madison.
I do not agree with the majority that clarification of our prior decision is needed. There has been no misinterpretation by the trial court. Nor is further time required for the DOT to comply. This court has ruled that the DOT caused flooding by plugging the culverts which previously allowed the waters to follow their natural drainage path away from appellee’s land and by the addition of the runoff from 103 acres of improved land in the City of Madison, which the DOT caused to be carried through a 54-inch culvert and dumped onto appellee’s land. By opinion dated June 11, 1980, this court ordered the DOT to cease flooding appellee’s land. Department of Transportation v. Burnette, 384 So.2d 916 (Fla. 1st DCA 1980). More than 90 days after the issuance of this court’s mandate, the trial court held a hearing on appellee’s motion for contempt and determined, on the record before him, that only by the imposition of a daily fine could the Department be persuaded to take steps to cease the flooding. The majority now takes from the trial court the only available method to enforce this court’s order and allows the Department to continue trespassing until such time as it sees fit to do otherwise. No date is set by which the flooding must cease and no compensation provided for the landowner, who is again denied deserved relief.
In Aspira of New York v. Board of Education of City of New York, 423 F.Supp. 647, 654 (S.D.N.Y.1976), the federal court,[4] in adjudging city officials guilty of contempt, made a ruling which could well have been made here:
[Djefendants have fallen far short of requisite diligence.... They have allowed deadlines to pass without advance announcements or volunteered explanations, awaiting complaint by the plaintiffs before even treating with the court concerning the delinquencies.... They have displayed an evident sense of nonur-gency bordering on indifference contrasting vividly with the spurt of activity on the heels of plaintiffs’ motion for a finding of contempt.
Without enforcement, there is no remedy, judgments are “advisory,” and judicial power a “mockery,” as held by the Florida Supreme Court in Seaboard Airline Railroad v. Tampa Southern Railroad Company, 134 So. 529, 533 (Fla.1931):
Without it [contempt power], such courts are mere boards of arbitration, whose judgments and decrees are only advisory.
*56 If a party can make himself a judge of the validity of orders which have been issued for the protection of property rights, and by his own act of disobedience can set them aside, then are the courts impotent, and what the Constitution of the state ordains as the judicial power becomes a mere mockery.
I dissent.

. 17 C.J.S. Contempt § 6, and cases cited therein.

. 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599 (1949). See also Jim Walter Resources v. Intern. Union, Inc., 609 F.2d 165, 169 (5th Cir. 1980).

.Restoration of natural drainage by unplugging culverts would allow the excess waters to drain into a series of wet-weather or retention ponds existing in the vicinity of the junior college, as testified by Jay Brown, DOT’S witness at the contempt hearing:
*55 [T]he normal outlet has been all the time, been to the series of, of wet-weather ponds or retention ponds located in the general vicinity of what is now the junior college.
No explanation for the DOT’S refusal to restore this natural drainage appears.

. The federal courts have not abdicated their responsibility to require that governmental entities comply with court orders protecting the rights of individuals: Hadnott v. Amos, 325 F.Supp. 777 (M.D.Ala.1971), Secretary of State found guilty of contempt and fined $5,452; Palmigiano v. Garvahy, 448 F.Supp. 659, 672 (D.R. 1.1978), civil contempt and $1,000 fine imposed for each day of noncompliance by officials, the court holding:
The Court concludes that a fine is necessary because the Court’s deference to the duly-appointed state officials has not persuaded the Department of Corrections that the August 10 order must be complied with, with all the speed that the Department’s resources permit . . .;
Powell v. Ward, 487 F.Supp. 917 (S.D.N.Y.1980), civil contempt $5,000 fine on entry of order and $1,000 thereafter for each day of noncompliance; Hamilton v. Love, 358 F.Supp. 338 (E.D. Ark. 1973), $500 fine for civil .contempt of county officials.