573 So.2d 822 (1991)
George W. JOHNSON, et Ux., Petitioners,
v.
Thomas BEDNAR, Respondent.
No. 75305.
Supreme Court of Florida.
January 17, 1991.
*823 Gary M. Farmer, Fort Lauderdale, for petitioners.
Lawrence J. Forno, Pompano Beach, for respondent.
KOGAN, Justice.
We have for review Johnson v. Bednar, 552 So.2d 928 (Fla. 4th DCA 1989), based on conflict with Balzam v. Cohen, 427 So.2d 329 (Fla. 3d DCA 1983). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const.
In 1983 petitioners sold to respondent the capital stock of a water-conditioning business. Their agreement contained a noncompetition clause prohibiting them from engaging in any manner, directly or indirectly, in any water-conditioning business.
Later, respondent sued petitioners for breach, resulting in a money judgment. In the August 20, 1986 final judgment, the trial court also found that petitioners had engaged in conduct that constituted a breach of the covenant not to compete and granted an injunction. The trial court enjoined petitioners for a period of two years from participating in any and all activities, financial or otherwise, connected to the business of water conditioning.
On January 28, 1987, respondent filed a motion for sanctions alleging continued and repeated violations of the injunction due to petitioners' involvement in the water-conditioning business through their son and on their own. The trial court found petitioners in contempt of court for wilful violation of the August 1986 injunction. Petitioners were assessed a fine of $25,000 to be paid to respondent within sixty days of the order, and the injunction was extended to August 20, 1989.
On appeal, the Fourth District affirmed. The district court agreed that the contempt order was based on clear and convincing evidence since the violations were done "knowingly and in willful disregard of the Final Judgment." Johnson, 552 So.2d at 929. The court, noting its disavowal of Balzam,[1] held that the $25,000 fine was proper to ensure compliance with the court's judgment, regardless of whether the fine was reasonably related to the actual damages suffered by the aggrieved party. *824 Lastly, the district court found that the contempt order did not require a purge provision since incarceration had not been ordered.
Petitioners contend Florida law does not permit a trial court to exercise its discretion when imposing a civil contempt fine designed to coerce compliance with the trial court's order. They argue that all civil contempt fines must bear a reasonable relationship to actual damages suffered by the party seeking the contempt order. In support of their argument, petitioners rely on South Dade Farms, Inc. v. Peters, 88 So.2d 891 (Fla. 1956), and National Exterminators v. Truly Nolen, Inc., 86 So.2d 816 (Fla. 1956).
It has long been recognized that courts have the authority to enforce a judgment by the exercise of their contempt powers. The reasons for allowing the punishment of civil or criminal contempt are clear. As the Supreme Court stated in the leading case of Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 450, 31 S.Ct. 492, 501, 55 L.Ed. 797 (1911), "[w]ithout authority to act promptly and independently the courts could not administer public justice or enforce the rights of private litigants." See also Seaboard Air Line Ry. Co. v. Tampa Southern R.R. Co., 101 Fla. 468, 134 So. 529, 532 (1931). It is essential that our courts have the judicial power to enforce their orders; otherwise, judgments are only advisory. If a party can make oneself a judge of the validity of orders issued by trial courts, and by one's own act of disobedience set them aside, then our courts are devoid of power, and the judicial power, both federal and state, would be a mockery. Gompers, 221 U.S. at 450, 31 S.Ct. at 501.
Sanctions in civil contempt proceedings may be employed for either or both of two purposes: to compensate the injured party for losses sustained, and to coerce the offending party into compliance with a previously issued court order. United States v. United Mine Workers, 330 U.S. 258, 304, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1947). If compensation is intended, the fine must be based on evidence of the injured party's actual loss. United Mine Workers, 330 U.S. at 304, 67 S.Ct. at 701.[2] However, if the purpose of imposing a fine is to coerce compliance the court may exercise its discretion, taking into consideration the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of a particular sanction in achieving the result desired. Id. If a fine is to be imposed as punishment or as a means of securing future compliance, the court, in determining the amount of the fine, also must consider the offending party's financial resources and the seriousness of the burden on that particular party. Id.
In South Dade Farms, this Court discussed civil and criminal contempt and some of the distinctions between them. The Court recognized that in a civil contempt case, a court may compel performance of a required act by coercive imprisonment or by a "compensatory fine" if the violation of the court order has resulted in damages to the other party. South Dade Farms, 88 So.2d at 899. The Court neither acknowledged nor considered those instances in which a coercive fine, as discussed in United Mine Workers, would be appropriate. We only can speculate that the Court elected to exclude a discussion of such a fine because this enforcement measure was inapplicable to the facts before it.[3] Because *825 the imposition of coercive fines was not addressed in South Dade Farms, that case should not be read as precluding this method of enforcement in appropriate civil contempt proceedings.
In National Exterminators, this Court disallowed, as part of a contempt order, both the payment of the complaining party's attorney's fees and a punitive fine of $1000 payable to the court's registry pending further orders. The Court did not expressly address its rejection of the $1000 fine, but merely acknowledged the power of the trial court to impose a compensatory fine payable to the injured party. It is unclear from the language used in the opinion the circumstances in which the Court intended to limit the imposition of civil contempt fines. In any event, we disagree that all civil contempt fines must be limited to compensatory fines measured by damages suffered by the injured party. A contempt fine must be related to actual damages when the trial court imposes a fine for the purpose of compensating a party for losses sustained. However, if the purpose of the fine is to coerce a party into compliance with a previously issued court order, then the court may exercise its discretion under appropriate circumstances and impose a fine, unrelated to actual damages, to achieve the result desired. See United Mine Workers, 330 U.S. at 304, 67 S.Ct. at 701. Therefore, we recede from National Exterminators to the extent that it can be read as limiting the imposition of civil contempt fines only to those instances in which the fine is compensatory.
In the present case, the fine was imposed on petitioners to coerce them into compliance with the previous court order. The trial court's task in measuring a coercive fine is not to determine what would compensate the aggrieved party, but rather the court must determine what is necessary to force the contemnor into compliance with the court order. In making this determination the court must "consider the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired," as well as "the amount of defendant's financial resources and the consequent seriousness of the burden to that particular defendant." United Mine Workers, 330 U.S. at 304, 67 S.Ct. at 701. The court has broad discretion to fashion a remedy based on the nature of the harm and the probable effect of alternative sanctions. Id. at 303-04, 67 S.Ct. at 701.
In this case the trial court found petitioners knowingly and wilfully disregarded the trial court's final judgment and injunction prohibiting them from participating in any manner in the water-conditioning business. In our view, the record supports this finding. The record reflects that on various occasions since August 20, 1986, petitioners have profited from business activities related to the water-conditioning business.[4] Petitioners continued to breach the covenant not to compete even though a money judgment of over $46,000 had been entered against them in 1985 and the trial court had issued an injunction in 1986. Testimony at trial indicated petitioners enjoyed a sizable profit from continuing to engage in business activities enjoined by the 1986 injunction.[5] At the time of the contempt hearing the injunction prohibiting petitioners from engaging in such activities was still in effect. In light of these facts, we believe the trial court complied with the factors prescribed in United Mine Workers in setting the fine imposed upon petitioners to coerce them to comply with the court's order.
*826 Lastly, petitioners argue that the trial court was required to provide a purge provision when it imposed the civil contempt fine. We agree with the district court's ruling, which states:
Such a contention would be sustainable if incarceration had been ordered, but a purge provision is not required if the contemnor does not need a key to his prison cell. In the case at bar, the trial court did not impose imprisonment. See Bowen v. Bowen, 471 So.2d 1274 (Fla. 1985). A purging provision, therefore, was unnecessary.
Johnson, 552 So.2d at 929.
For the reasons stated, we approve the opinion of the Fourth District and disapprove the Third District's opinion in Balzam v. Cohen.
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD, BARKETT and GRIMES, JJ., and EHRLICH, Senior Justice, concur.
NOTES
[1] In Balzam v. Cohen, 427 So.2d 329 (Fla. 3d DCA 1983), the Third District Court held that the amount of a fine imposed in a civil contempt proceeding must be reasonably related to the actual damages suffered by the aggrieved party.
[2] In stating the rule that a compensatory fine is to be based on actual loss, the Court included among its cited authorities the case of Leman v. Krentler-Arnold Hinge Last Co., 284 U.S. 448, 52 S.Ct. 238, 76 L.Ed. 389 (1932). In that case the Supreme Court allowed the use of the contemnor's profits to measure the amount of a civil contempt fine imposed for violation of an injunction in a patent infringement suit, stating: "While the distinction is clear between damages, in the sense of actual pecuniary loss, and profits, the latter may none the less be included in the concept of compensatory relief." 284 U.S. at 456, 52 S.Ct. at 241-42. Thus, by citing the Leman case in United States v. United Mine Workers, 330 U.S. 258, 304, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1947), the Court has tacitly approved the use of a contemnor's wrongful profits as a method of measuring a civil contempt fine.
[3] In South Dade Farms, Inc. v. Peters, 88 So.2d 891 (Fla. 1956), a compensatory fine was imposed on South Dade Farms, Inc., in a civil contempt proceeding for violating an injunction decree prohibiting South Dade Farms, Inc., from leasing to third parties lands covered by a lease agreement with Peters.
[4] These activities include: 1) retail sales of water-conditioning products from petitioners' wholesale business; 2) receipt of rental income from the leasing of premises for the purpose of operating a retail water-conditioning business; and 3) the purchase of installment sales contracts from operators of retail water-conditioning businesses.
[5] The record also contained testimony indicating petitioners' profit from the retail installment contracts alone would exceed $37,000 for the one-year period from September 1986 to August 1987.