727 So.2d 251 (1999)
Anthony GREGORY, Petitioner,
v.
Everett RICE, Sheriff of Pinellas County, Florida, Respondent.
No. 92,471.
Supreme Court of Florida.
February 11, 1999.
*252 Bob Dillinger, Public Defender, and Keri Kepp, Assistant Public Defender, Sixth Judicial Circuit, Clearwater, Florida, for Petitioner.
Joseph R. Boyd and William H. Branch of Boyd, Lindsey, Williams & Branch, P.A., Tallahassee, Florida, and Chriss Walker, Department of Revenue, Office of Child Support Enforcement, Tallahassee, Florida, for Respondent.
OVERTON, Senior Justice.
This case involves the wrongful incarceration of a father who failed to pay child support payments. The father, Anthony Gregory, was sentenced to ninety days in jail with a $200 purge provision even though the unrefuted record in this proceeding reflects that he had no money and no assets other than the clothes he was wearing; that he had only recently been released from jail for this same offense; and that he had obtained employment just two days before the hearing. He was released from jail in this case only after this Court directed the State to file a response to his petition for a writ of habeas corpus. On the same date the Department of Revenue filed its response, it requested the trial court to release Gregory "in the interests of justice." In its response, the Department of Revenue moved to dismiss this cause as moot based on Gregory's release.
Originally, upon being notified that Gregory had been released, we dismissed this action as moot. On motion for rehearing, Gregory asserted that we should accept this case to address several issues raised in the petition because the issues are of great public importance, are commonly involved in these types of proceedings, and are very likely to recur.[1] Those issues concern the handling of contempt proceedings in matters presented to the court by Department of Revenue personnel and heard by child support enforcement hearing officers. We find we should accept jurisdiction. Accordingly, by this opinion we vacate our prior order dismissing this cause.
The relevant facts of this case are as follows. Gregory was incarcerated from August to October, 1997, for failure to pay child support. On the day before he was released, he was served with a notice of hearing for failure to pay child support. In January 1998, Gregory appeared as directed before Angela Hoogeven, a child support enforcement hearing officer, on a motion for contempt filed by the Department of Revenue. At the hearing, it was determined that Gregory owed $7,218 in child support arrearages. Gregory testified that he had just started working again (he had worked for only two days) and was expecting a paycheck of $55; he also testified that he had no cash or other assets other than his clothing. After this testimony was presented, the hearing officer found that Gregory "ha[d] been or was employed for six months," even though there was nothing in the record to support this finding, and found Gregory to be in contempt for failure to pay support. In the recommended order, the hearing officer sentenced Gregory to jail for ninety days with a $200 purge amount.
A portion of the transcript of the above proceedings is unavailable because the tape recording of part of the proceedings was misplaced. Nevertheless, it appears that Gregory was incarcerated without a proper determination that he had the present ability to purge. According to allegations in the petition, the routine process for handling cases of this type in Pinellas County is as follows: Four respondents are called before two hearing officers and are duly sworn; each is then addressed separately; after inquiry, those who are taken into custody are instructed to have a seat and wait for their court orders; the hearing officer's assistant then takes the order down the hall and obtains a judge's signature on the order; the *253 assistant then returns with the executed orders; and the hearing officers formally adjudicate and sentence the respondents.[2]
In his petition, Gregory contends that the civil contempt proceeding that led to his incarceration was actually criminal in nature because (1) no proper finding was made that he had the ability to purge the contempt prior to his incarceration and (2) the trial court failed to properly review the recommendations of the hearing officer as required by Florida Family Law Rule 12.491.[3] We recently adopted new Florida Family Law Rule 12.615 to specify the procedure that must be followed in civil contempt proceedings in family law cases. The law in this area has not changed recently; however, cases such as this one reflect that confusion still exists as to the process to be followed. As a result, we found it necessary to adopt a specific rule to provide detailed guidance in this area. In adopting the rule, we stated:
We have noted on numerous occasions that there are two distinct type of contempt proceedings: (1) criminal contempt proceedings, and (2) civil contempt proceedings. Bowen v. Bowen, 471 So.2d 1274 (Fla.1985); Pugliese v. Pugliese, 347 So.2d 418[422] (Fla.1977).
Criminal contempt is used to punish intentional violations of court orders or to vindicate the authority of the court, and "potential criminal contemnors are entitled to the same constitutional due process protections afforded criminal defendants in more typical criminal proceedings." Bowen, 471 So.2d at 1277 (emphasis added). See also Hicks v. Feiock, 485 U.S. 624, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988).
On the other hand, the primary purpose of a civil contempt proceeding is to compel future compliance with a court order. International Union, United Mine Workers v. Bagwell, 512 U.S. 821, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994). A civil contempt sanction is coercive in nature and is avoidable through obedience. Id. at 827[, 114 S.Ct. 2552].
In Bowen, we noted that a present ability to purge the contempt sanction is an essential prerequisite to incarceration for civil contempt. In Johnson v. Bednar, 573 So.2d 822 (Fla.1991), we further concluded that the necessity of a purge provision in imposing a civil contempt sanction is only required where incarceration is ordered. However, after we issued Bednar, the United States Supreme Court concluded that any coercive sanction ordered in a civil contempt proceeding must afford the contemnor an opportunity to purge; otherwise, the contempt is criminal in nature and requires that all of the constitutional due process requirements inherent in criminal cases be provided to the contemnor, including, in some cases, the right to counsel and to a jury trial. See Bagwell, 512 U.S. at 829[, 114 S.Ct. 2552]. Only if the fine is compensatory is it appropriate to dispense with a purge provision. Id. Thus, Bagwell effectively overruled our conclusion in Bednar that a purge provision is required only when incarceration is ordered.

*254 In addition to discussing the distinct types of contempt, in Bowen we also set forth the procedures to be followed in civil contempt proceedings involving support in family law matters. First, an initial order directing that support or alimony be paid is entered. Because such an order is based on a finding that the alleged contemnor has the ability to pay, the initial order creates a presumption in subsequent proceedings that there is an ability to pay. Second, in a subsequent proceeding, the movant has the obligation to show that a prior order of support has been entered and that the alleged contemnor has failed to pay all or part of that support. The burden then shifts to the alleged contemnor, who must establish that he or she no longer has the ability to pay the support. The court must then evaluate the evidence and determine whether the alleged contemnor has the present ability to pay the support and has willfully refused to do so. If the court finds in the affirmative, then the court must determine the appropriate sanctions to obtain compliance. Under Bagwell, regardless of whether the sanction is incarceration, garnishment of wages, additional employment, the filing of reports, additional fines, the delivery of certain assets, the revocation of a driver's license, or other type of sanction, the court must provide the contemnor with the ability to purge the contempt; that is, if the contemnor satisfies the underlying support obligation, the sanctions must be lifted.
If the court finds that the contemnor's conduct is serious enough to warrant punishment, then a criminal contempt proceeding is the appropriate remedy under which the contemnor is entitled to the appropriate due process protections available in criminal cases.
While these principles appear to be fairly straightforward, cases reflect that courts often fail to apply the principles properly.
In re Amendments to the Florida Family Law Rules of Procedure, 723 So.2d 208, 213, 23 Fla. L. Weekly S573, S576 (Fla.1998). As our decision in Amendments makes clear, the court must evaluate the evidence and determine whether the alleged contemnor (1) has the present ability to pay the support and (2) has willfully refused to do so.[4] The problem at issue here, however, involves not only a proper determination as to whether the alleged contemnor has the present ability to pay but also the proper procedure to be followed when a hearing officer, rather than an article V[5] judge, hears evidence and makes recommendations to the court regarding the disposition of child support enforcement proceedings.
Child support hearing officers are empowered to "issue process, administer oaths, require the production of documents, and conduct hearings for the purpose of taking evidence." Fla. Fam. L.R. 12.491(e). Among other things, a hearing officer is to "evaluate the evidence and promptly make a recommended order to the court. Such an order shall set forth findings of fact." Fla. Fam. L.R. 12.491(e)(4). After the court receives a recommended order, the court is to review the recommendation and is to enter an order promptly absent good cause to do otherwise. Additionally, any party affected by the order may move to have it vacated within ten days from the date of entry. Fla. Fam. L.R. 12.491(f).
Although rule 12.491 provides that the trial court is to review a hearing officer's recommendation and promptly enter an order, this does not mean that the trial court is to merely "rubber-stamp" the hearing officer's recommendation without first independently reviewing the hearing officer's findings of fact. As we noted in addressing a similar issue when reviewing Florida Family Law Rule 12.490, governing general masters:
In reaching this decision, we emphasize that we are in no way implying that judges *255 may merely "rubber-stamp" the recommendations of masters. An adequate method of judicial review of the recommendations is still required given the limited judicial authority that may be vested in masters. According to comments received by this Court, however, confusion apparently exists as to the appropriate requirements for review given our holding in Lyon v. Lyon, 54 So.2d 679, 680 (Fla.1951), in which we stated:
We do not construe the ... rule to mean that, in the absence of exceptions, the entry of final decree by the court in accordance with the findings and recommendations of the Master becomes a mere formality. Whether exceptions are filed to the report of the Master or not, it is the duty of the court to examine and carefully consider the evidence and determine whether under the law and the facts the court is justified in entering the decree recommended by the Master.
We find that, provided a judge carefully considers (1) whether the evidence and facts, as fully set forth in a master's report, support the recommendations of the master and (2) whether the recommendations are justified under the law, then the review, absent exceptions, is adequate and satisfies the spirit of Lyon. Notwithstanding this finding, we emphasize that a judge must review the entire record if exceptions are filed.
In re Family Law Rules of Procedure, 663 So.2d 1049, 1052 (Fla.1995). As we did with the general master's rule, we find that, under rule 12.491, a trial judge must carefully consider whether the evidence and findings of fact, as fully set forth in the hearing officer's recommended order, support the hearing officer's recommendations. Moreover, if a party moves to vacate the order as provided by the rule, the trial judge must review the entire record of the proceedings, including listening to the electronic recording of the proceedings if warranted. Procedures must be set into place to ensure that the hearing officer sets out specific findings of fact to support the contemnor's present ability and willful refusal to pay; that the reviewing judge carefully considers the findings of fact; and that the alleged contemnor properly has been found to have the present ability to purge and is given the opportunity to do so before any sanction, particularly incarceration, is imposed.
In the instant case, the order at issue apparently was a standard form order, which set forth limited and internally inconsistent facts in support of the finding that Gregory had the present ability to pay. Recommended orders must contain detailed findings of fact to support the hearing officer's recommendation. For instance, if the findings of fact state that the alleged contemnor is employed, the findings should recite where the contemnor is employed, together along with the dates of employment.[6] Otherwise, the reviewing judge does not have sufficient information to properly review the order. Had that been done in this case, both the hearing officer and the reviewing judge would have seen that Gregory had been employed for only two days since his release from incarceration. Instead, the hearing officer made the determination that Gregory was making $800 a month plus overtime, based on Gregory's statement that, when he worked, he worked forty hours per week, plus overtime.
Additionally, in Amendments, we concluded that prior to imposing any sanction, particularly when the sanction is incarceration, the hearing officer must advise the alleged contemnor of the alleged contemnor's rights under the rule. As noted, under rule 12.491, any party may file a motion to vacate an order within ten days from the date the order is entered and any party may move to modify the order at any time. Fla. Fam. L.R. 12.491(f), (g). Because many contemnors have no counsel and may be unaware of their rights under the rule, it is imperative that officers advise them of those rights. Otherwise, contemnors may sit in jail for extended periods of time without realizing *256 they had the right to contest the order or have it modified.
As we stated in our recent Family Law Rules opinion:
We acknowledge and are sympathetic to the importance of ensuring that individuals who are entitled to support receive that support. We must be equally diligent, however, in protecting the rights of those obligated to pay support. As the court noted in Pompey:

The consequences of a civil contempt in the area of child support enforcement are potentially greater than those of a criminal contempt. Yet there are few procedural safeguards. Many individuals are unrepresented and may be unaware of their rightssuch as the right to periodic review of the contempt order and the right to request a hearing to demonstrate that they no longer possess the ability to pay. The consequences are even more dire for an indigent individual caught in a "Catch-22" situation: he cannot afford to hire an attorney, yet he has no right to an attorney because the court indulges in the assumption that no incarceration can take place unless the contemnor possesses the present ability to pay. See Bowen, 471 So.2d at 1278. Contempt jurisprudence must attempt to balance the need of a court to enforce its orders with the doctrine that a court's power to obtain compliance should be tempered by safeguards that ensure fundamental fairness.

Pompey v. Cochran, 685 So.2d 1007 (Fla. 4th DCA 1997). We recognize that our decision today will impose the requirement of additional hearings on an already heavily burdened judicial system. However, inconvenience cannot be cited as a reason to deny an individual the due process to which the individual is entitled. Incarceration to obtain compliance with a court order may indeed be warranted when a contemnor has the ability to comply with the order and willfully refuses to do so, but incarceration for the simple failure to pay a debt is clearly prohibited. We will not allow our rules to be modified to serve as the basis for creating a debtor's prison.

Amendments, 723 So.2d 208, 23 Fla. L. Weekly at S577 (emphasis added).
Accordingly, by this opinion, we vacate our prior order dismissing this action but find that, because Gregory has been released, no further action is necessary in this case.
It is so ordered.
HARDING, C.J., SHAW, ANSTEAD and PARIENTE, JJ., and KOGAN, Senior Justice, concur.
WELLS, J., dissents with an opinion.
WELLS, J., dissenting.
I dissent from the majority's granting of the motion for rehearing because this matter is moot.
I write because I believe the majority opinion states as fact matters which at most are equivocal, and I am concerned that this Court maligns the procedure employed by the Sixth Circuit based upon these inaccurate statements, without providing those involved in the administration of that court's procedure a fair opportunity to respond.
First, as to the facts, there is a transcript of the January 13, 1998, hearing before the hearing officer. There is also a "Respondent's Questionnaire" dated January 13, 1998, filed by respondent, and a financial affidavit dated January 13, 1998, which bears respondent's signature. The facts reported in the hearing and shown by the questionnaire and financial affidavit are that on January 13, 1998, respondent owned clothing worth $200 and had an average gross monthly income from employment of $800. The evidence at the hearing was that respondent had been held in contempt six prior times and had been incarcerated following a hearing in August 1997.
The hearing officer's report states:
Respondent has been or was employed for 6 months and failed to pay child support as ordered.
Employed again for 1 week
. . . .
Paycheck from 1/16/98 $55
*257 Contrary to the majority's assertion, this is an accurate factual conclusion from the record in this case, including the financial affidavit signed by respondent. I read the "6 months" to refer to the period prior to respondent's last incarceration for contempt.
Second, I believe it is totally unfair and not helpful to be critical of a circuit's procedures based upon allegations as to those procedures contained in a motion for rehearing-especially in this instance, when the granting of rehearing is based upon hearsay within hearsay. The majority's statements appear based upon the following from the petition for writ of habeas corpus filed by counsel, who was not at the hearing.
Perplexed that Petitioner was incarcerated without the opportunity to be heard by a duly constituted judicial officer, the undersigned counsel inquired of Mensh and Macintosh [attorneys for the Department of Revenue] as to how these hearings are conducted. Counsel was informed that four respondents are called before two hearing officers and are duly sworn. Each respondent is then addressed separately. After inquiry the respondents who are to be taken into custody are instructed to have a seat and wait for their court orders. In the meantime, the hearing officer's assistant literally runs down the hall in order to obtain the judge's signature on the respective orders. Upon returning with signed orders, the respondents are recalled before the hearing officers who formally adjudicate and sentence the respondents. See Appendix B and audio cassettes for tenor and substance of hearings.
I conclude that because this petition became moot, there was no response to these hearsay allegations. Before this Court draws the conclusion which the majority draws, surely we should ask for a specific response to this hearsay.
Finally, our courts are called upon to do a difficult balancing in these cases. The courts must balance the rights of respondents against the rights of children who are entitled to receive child support payments. The fact that this respondent has six times been held in contempt demonstrates the difficulty of this work. Hearing officers are a necessary component of being able to do this job in such a way that respondents' rights are protected but also in a way that will effectively recover for children what the court has determined the children are entitled to for support. I am certainly open to improvements in the process, but I will not join in the criticism in this opinion, which I do not believe is accurately or adequately supported by the record.
NOTES
[1] Mootness does not destroy this Court's jurisdiction when the questions raised are of great public importance or are likely to recur. See Dugger v. Grant, 610 So.2d 428, 433 n. 1 (Fla.1992); Holly v. Auld, 450 So.2d 217, 223 n. 1 (Fla.1984).
[2] The tapes submitted to this Court as to the proceedings used in Pinellas County are, for the most part, unintelligible. Consequently, we are unable to verify the alleged process. Courts should take great care when electronically recording proceedings to ensure that those recordings will be understandable for purposes of review.
[3] Gregory raises a total of four issues in his petition, asserting that: (1) Florida Family Law Rule 12.491 is an improper delegation of authority; (2) he was denied a fundamentally fair hearing; (3) the trial court did not properly review the hearing officer's findings and the civil contempt proceeding was converted to criminal contempt because there was no proper finding that Gregory had the ability to purge the contempt prior to his incarceration; and (4) all indigent litigants in family law civil contempt proceedings should be provided counsel. As to issue one, we have previously determined that child support enforcement proceedings are properly heard before hearing officers and that consent of the parties is not required for a child support enforcement proceeding to be conducted by a hearing officer. Heilman v. Heilman, 596 So.2d 1046 (Fla.1992) (interpreting prior rule 1.491). We decline to address issue four, noting, however, that counsel must be provided to indigent litigants who are faced with criminal contempt. See In re Amendments to the Florida Family Law Rules of Procedure, 723 So.2d 208, 23 Fla. L Weekly S573, S574 (Fla.1998).
[4] In Amendments, we went on to discuss problems that frequently occur when applying these principles: (1) what procedure is to be followed when the alleged contemnor fails to appear, and (2) what procedure is to be followed when the alleged contemnor is provided with an opportunity to purge before incarceration is to be imposed. Neither of these situations is present here.
[5] Art. V, Fla. Const.
[6] In this case, the order indicated that Gregory "has been or was employed for six months and failed to pay child support." Obviously, if Gregory was incarcerated for three months during the six-month period before the hearing, it was impossible that he "ha[d] been or was employed for six months."