734 So.2d 582 (1999)
Rebecca A. BAITTY and Rebecca A. Baitty, P.A., Appellants,
v.
Dianne WEAVER and Weaver & Weaver, P.A., Appellees.
No. 96-3824.
District Court of Appeal of Florida, Fourth District.
June 16, 1999.
Rebecca A. Baitty of Rebecca A. Baitty, P.A., Sarasota, for appellants.
Scott A. Mager of Kluger, Peretz, Kaplan & Berlin, P.A., Weaver & Weaver, P.A., and Dianne Weaver, Fort Lauderdale, for appellees.

ON MOTION FOR REHEARING
STEVENSON, J.
We withdraw our prior opinion in this case and substitute the following opinion on rehearing. Attorney Rebecca A. Baitty appeals from an order of the trial court finding her in contempt and ordering her to pay more than $76,000 in fees and costs incurred by opposing counsel. Because our review of the record does not support a finding that Baitty made a misrepresentation to the Florida court, we reverse.
The contempt order in the instant case came at the tail-end of a number of related litigations. Andrew Ewing, a West Virginia citizen, was paralyzed in a car accident near Plantation Key, Florida. Following the accident, he retained Dianne Weaver and Weaver and Weaver, P.A., the appellees (hereinafter "Weaver"), to represent him. Ewing and Weaver entered into a contingency fee agreement. Ewing's lawyers brought a declaratory judgment action in West Virginia, seeking uninsured motorist coverage, and a products liability action in Florida. The West Virginia action resulted in a settlement in the amount of $700,000.00.
Once the settlement was reached, a dispute arose between Ewing and Weaver regarding the attorney's fees to be paid. Weaver withdrew as counsel and Ewing then retained Attorney Rebecca A. Baitty to represent him in the fee dispute and in the ongoing products liability action. In September of 1994, during the course of the litigation concerning the fee dispute, the trial court granted Weaver's ex parte *583 motion to have records produced by the law firm sealed. Ultimately, Baitty sought to sever Weaver's claims for fees and costs and her claim of entitlement to a charging lien from the products liability action. In her response to Baitty's motion to sever, Weaver sought to either have the court "engage in an in camera inquiry into privilege or sever the entire attorney fees issue." In September of 1995, the lower court granted the motion to sever and ordered that the proceedings be conducted in camera and that all filings, evidence, and hearings be sealed.
The trial court rendered a final order on the claim for attorney's fees on January 5, 1996, and Ewing appealed. While the case was on appeal to this court, Weaver filed a motion in the trial court to view or inspect the court file, ultimately seeking to unseal the entire record. Baitty objected to unsealing the entire record. The trial court conducted a hearing on Weaver's motion to unseal the record on March 29, 1996, during which the following colloquy ensued:
WEAVER: They [the clerk's office] don't seem to be able to find it [the record]. In any event, we filed a motion to allow us access to it so we can review it and make copies if necessary to assist us in making directions to the clerk.
We have received an extension of time from the Fourth District Court of Appeals because of this problem, through April 11, to make our cross designations. In the meantime, I have been thinking about it, and this is very awkward to have it go up under seal and not be able to get access.
And Miss Baitty at one time said she had no objection, in fact, wanted portions of the file unsealed, and then I think at one time, she indicated she wanted the whole file unsealed. We have absolutely no objection and would amend our motion at this time to ask that the court just unseal the file. And let's all go forward from here.
She had asked for that before. I don't know if she's changed her mind, but that's what we would ask for.
THE COURT: Miss Baitty.
BAITTY: I have never asked for the whole file being unsealed. The record shows what I said. What I said, portions of the file could legitimately remain unsealed. I opposed unsealing it. I think the court of appeals has jurisdiction now. (emphasis added).
The trial court ultimately ordered the record unsealed.
Subsequently, Weaver filed a motion seeking to have Baitty held in contempt for allegedly making a misrepresentation to the court at the March 29, 1996 hearing. Weaver informed the trial judge that in the midst of the Florida litigation, Baitty, on behalf of Ewing, had filed suit against Weaver in a West Virginia court, alleging breach of fiduciary duty and fraud and seeking rescission of the contingency fee contract. Weaver pointed to the following language from the West Virginia complaint to support her allegation that Baitty had made a misrepresentation to the Florida court:
Dianne Weaver obtained an order from Judge Cocalis sealing all evidence presented at the hearings, and refused plaintiff's [Ewing's] requests that all or portions of the record be made public. (emphasis added).
Weaver contended that this language in the West Virginia complaint was contrary to Baitty's representation at the March 29, 1996 hearing that she had "never asked for the whole file being unsealed."
After several hearings, the trial court rendered the order which is the subject of this appeal, finding that Baitty's representation during the March 29, 1996 hearing that "we have never asked that all of the record be unsealed" was untrue "as evidenced by the West Virginia complaint and amended complaint"[1] and amounted to direct *584 civil contempt since "the statement was made wilfully and deliberately for the purpose of obstructing the court's administration of justice." The court then ordered Baitty to pay all costs and fees incurred by Weaver with regard to the sealing/unsealing of the court file, $76,140.00.
We are bound to reverse because the record fails to support the trial court's finding that Baitty's statement during the March 29 hearing that she had "never asked for the whole file being unsealed" was untrue. The trial court relies on the West Virginia pleadings to conclude that Baitty, contrary to her representations at the March 29 hearing, had previously sought unsealing of the whole record. Specifically, the trial judge cited to the allegation in the initial complaint that Weaver "had refused plaintiffs [Ewing's] request that all or portions of the record be made public" and the allegation in the amended complaint that Weaver had refused Ewing's "request that she [Weaver] agree that all or portions of the record be made public." Considering that the allegation in the initial West Virginia complaint that Weaver had refused Ewing's "requests that all or portions of the record be made public" was stated in the alternative, this pleading can provide no unequivocal support for the proposition that Baitty had ever asked that all of the record be made public as opposed to only portions of the record. Baitty acknowledged at the hearing that she previously had no objections to certain portions of the record being unsealed. The allegation in the amended complaintthat Weaver had refused Ewing's request that Weaver agree that all or part of the record be unsealed lends even less support for the finding that Baitty had lied in stating that she had never asked that the whole file be unsealed. Despite the inclusion in the record on appeal of several volumes of transcripts of hearings in the Broward County proceedings, nowhere does it ever occur that Baitty asks the trial court to unseal the entire file. Baitty's statement to the Broward County circuit judge that she "had never asked for the whole file being unsealed" was simply not shown to be untrue.
In Wilken v. Data Lease Financial Corp., 651 So.2d 1233 (Fla. 4th DCA 1995), this court reversed an order of indirect civil contempt, finding the trial court's factual determination of intent unsupported by the record where the clerk of court had mistakenly, but wrongfully, violated a court order. In Wilken, the clerk of court in the Fifteenth Judicial Circuit had a longstanding policy of automatically sealing court files containing petitions for approval of attorney's fee contracts. A specific order of the trial court, however, required that a particular file involving a petition for approval of an attorney's fee contract not be sealed. Due to the longstanding practice of the clerk's office, the file was sealed by a deputy clerk despite the court order. This court found some ambiguity in the trial court's order and stated "we think the confusion of the clerk's standing practice, although wrong, precludes contempt." Id. at 1236. Wilken relied in part on Tubero v. Ellis, 472 So.2d 548, 550 (Fla. 4th DCA 1985), a case which held that the trial court erroneously found a judgment debtor in contempt where it could be "reasonably hypothesized [the judgement debtor] acted on the belief his actions were entirely proper." Tubero emphasized that "contempt is ... an extreme sanction" and that "[i]ntent is a necessary element of contempt." Id. at 550.
Taken together, Wilken and Tubero stand for the principle that an order of contempt cannot be approved where the underlying factual basis for the finding of *585 contempt is not supported by the record and there is considerable doubt as to the contemnor's intent to either violate a court order or hinder the court in its administration of justice. Here, the West Virginia pleadings provide no competent evidentiary basis to support the trial court's finding that Baitty told an untruth and intended to hinder the court in its administration of justice. Since the trial court's factual finding is not supported by the evidence, we must reverse the order of contempt. Accordingly, we need not reach appellant's alternative argument, which is that the contempt order on appeal is appropriately criminal and not civil and that the procedural prerequisites for criminal contempt were not followed.
REVERSED.
KROLL, KATHLEEN J., Associate Judge, concurs.
FARMER, J., dissents with opinion.
FARMER, J., dissenting.
We confront in this case a very troubling circumstance. One lawyer in a civil case has accused another lawyer of lying to the court to influence the outcome of a particular proceeding and asked the court to hold the offending lawyer in contempt. In fact there were several charges of contempt alleged. If I read the record correctly, the trial judge ended up holding seven hearings [sic] on the contempt motion which is the subject of this appeal. During the seven hearings, the trial court heard extensive testimony, as well as equally extensive argument, from all concerned. Ultimately the trial court found appellant guilty on only one charge, namely that she had lied to the circuit judge here in Florida regarding whether she had ever previously asked that the Florida court file be unsealed.
I cannot agree with the majority that the evidentiary record of the contempt proceedings does not support the trial court's finding on the essential issue, whether appellant lied to the court. The record of the West Virginia proceedings, where she had previously made certain statements that were used to prove the falsity of the representation to the court in Florida, was certainly competent evidence in the chain of proof as to whether there was a knowingly false statement made to induce judicial action in Florida. Indeed if one cannot establish falsity by proof of contrary statements previously made by the same declarant, then we have severely and unnecessarily eroded perhaps the most reliable evidence of falsityfrom the liar's own lips.
Nor do I agree that we can reverse simply because the record of this case evidences "considerable doubt" as to the contemnor's intent in making a statement that the trial judge has found false. The issue of her intentdid she intend to mislead the court?is surely factual. It turns almost entirely on nonrecord factors such as her demeanor while testifying during the contempt hearing, the modulations in her voice as she answered, whether she appeared nervous, and all the many things that factfinders consider when determining credibility. Any "considerable doubt" about her intent, was for the trial judge to resolve. I am required to accept the trial judge's findings of fact on the issue and affirm her decision unless there was utterly no evidence in the record to support them. There is literally so much testimony and documentary evidence here that a reviewing judge is forcedeven more so to lean on the factfinder's resolution of considerably disputed testimony.
Having said all that, it seems to me that this case is horribly overwrought. It has all the earmarks of a blood feud between ancient enemies, who happen to be lawyers representing the same clientone the former lawyer, the other the successor. While I have great respect for the trial judge's patience and fortitude in sitting through seven hearings just to determine whether a successor lawyer was in contempt for violating an order sealing the Florida court file while litigating related *586 proceedings in another state, I still cannot escape the feeling that someone, somewhere, should simply have called a halt to all of this a long way back. As bad as lying to judges is in the nature of things the issues here were well overstated, and seven hearings were just too much.
I am also bothered by the nature of the penalty in this case for a single contumacious utterance. The judge has ordered the successor lawyer to pay the first lawyer $76,300 in attorney's fees occasioned by the many hearings. I recognize that in Johnson v. Bednar, 573 So.2d 822 (Fla. 1991), the supreme court held that a civil contempt fine may be employed to compensate a party for actual losses sustained. See also Int'l Union United Mine Workers of America v. Bagwell, 512 U.S. 821, 828, 114 S.Ct. 2552, 129 L.Ed.2d 642 ("A contempt fine accordingly is considered civil and remedial if it... `compensate[s] the complainant for losses sustained....' Where a fine is not compensatory, it is civil only if the contemnor is afforded an opportunity to purge.") (c.o.); and In re Amendments to the Florida Family Law Rules of Procedure, 723 So.2d 208, 213 (Fla.1998) ("Only if the fine is compensatory is it appropriate to dispense with a purge provision."). Still under the circumstances of this case, the amount and nature of the fine concern me. Until Johnson v. Bednar, I had never understood that civil contempt can or should be used for such palpable punishment.[2] Under the holdings cited above, however, because the fine here is considered properly compensatory, I do not believe I can do anything but vote to affirm.
I cannot end this without adding a personal observation. The system cannot possibly operate dependably and effectively if counsel are tolerated to misrepresent facts or law to the court. It bears reemphasizing therefore that we simply cannot justify lawyers lying to judges. As a consequence we should not take lightly a judge's finding that a lawyer has in fact lied to the court. To do so is to invite other lawyers to do likewise for the sake of prevailing in the name of their clients.
At the same timeand quite paradoxically! the image of lawyers calling one another liars raises its own set of problems. The necessity for judges not to tolerate intentional lying by officers of the court should not be understood by opposing lawyers as an excuse to litigate every misstatement by their opposition during the heat of battle. A lawyer who thinks the other lawyer has lied should exercise considerable restraint and judgment before raising such an issue with a court. The nature of the misrepresentation should be meaningful, perhaps even in some way dispositive of an important issue or proceeding, and there should be a compellingly certain need for such a proceeding. While I am unable to conclude that there was no possible necessity for the proceeding in this case, I do not think I personally would have initiated it if I had been the other lawyer.
NOTES
[1] Subsequent to the March 29 hearing but prior to the trial court's contempt order, the complaint was amended to read:

Dianne Weaver obtained an order from Judge Cocalis sealing all evidence presented at the hearings, and refused plaintiff's request that she agree that all or portions of the record be made public.
[2] I was the unsuccessful appellate lawyer in Johnson v. Bednar.