656 So.2d 1343 (1995)
Lynne E. KELLEY, Appellant,
v.
Thomas D. KELLEY, Appellee.
No. 93-2627.
District Court of Appeal of Florida, Fifth District.
June 16, 1995.
Scott R. McHenry of Dean, Mead, Egerton, Bloodworth, Capouano & Bozarth, P.A., Orlando, for appellant.
Charles J. Collins, Jr., Orlando, for appellee.
THOMPSON, Judge.
Lynne E. Kelley ("wife") appeals the trial court's final judgment dissolving her marriage to Thomas D. Kelley ("husband"). On appeal, the wife contends that the trial court erred in five respects: 1) in incorrectly computing child support in accordance with the statutory guidelines; 2) in ignoring the parties' stipulations regarding visitation; 3) in inequitably distributing the parties' property; *1344 4) in failing to secure the wife's awards properly; and 5) in improperly imputing income to the wife. We conclude that the trial court erred in determining child support and in distributing the parties' property. Accordingly, we reverse in part and remand to the trial court for additional findings consistent with this opinion.

IMPUTATION OF INCOME FOR CHILD SUPPORT DETERMINATION
The parties met during college and were married on 12 June 1976. From this union, two daughters were born. The parties separated in 1992 and at that time were residents of Lake County, Florida. The wife moved, along with their two daughters, to Orlando and established a new residence. The husband stayed in the Lake County residence until January 1993. The wife filed her petition for dissolution on 16 October 1992.
The wife had been employed with Miller Bearings, Inc. ("Miller Bearings"), as a part-time employee before she married.[1] After the marriage, she began to work full-time. During the wife's 17 years of employment with Miller Bearings, she progressed from a part-time employee to the president and chief operating officer of the company. Although the chief operating officer of the company, the wife is not a shareholder of the company. She receives health insurance, automobile insurance, life insurance, and a profit-sharing plan through the company, all of which were included in the amounts shown on her amended financial affidavit. The wife's $55,000 annual salary is the lowest salary of any of the corporate officers.[2] The court found that the wife's father regularly supplemented the parties' income during the marriage. The father paid $1,000 per month for the children's private school and contributed $706 per month toward the salary of the parties' nanny/housekeeper. The court found that these amounts could have been paid to the wife as additional compensation for her position as president of Miller Bearings. In this regard, the husband presented expert testimony that the wife was underpaid considering the size of the company and her responsibilities in the company.
The husband worked at various jobs throughout the marriage, but primarily had worked in construction as a superintendent during the past 10 to 12 years, working for five or six different companies. The husband estimated that his average income had been $24,000 to $25,000 per year. His highest income occurred in 1991 when he was employed by a Connecticut company to handle a project in Florida and was paid $60,000 per year. During 1993, the husband testified that he earned only $1,670 per month. During this period of time, he was doing insurance renovation work. The wife estimated the husband's income to be in the low $30,000's over the years, except for the year he worked for the Connecticut company and the year he did reconstructive work after a severe hail storm.
In calculating the amount of child support to be paid to the wife, the court imputed a net monthly income of $4,609.60 to the wife and a net monthly income of $2,500 to the husband. In calculating the wife's net income in the final judgment, the court imputed to her the same monthly income as the senior vice president and arrived at the net monthly income by multiplying the wife's net income at $4,585 ($3,440) by 1.34, the ratio by which $6,158 exceeds $4,585.
In this case, it is clear that the trial court found that the earnings claimed by the wife were artificially low and, therefore, that the court imputed income to the wife to reflect what her actual earnings should be. In doing so, the trial court did not abuse its discretion. In Polley v. Polley, 588 So.2d 638 (Fla. 3d DCA 1991), the court held that income could be imputed to a parent for the purpose of awarding child support where, although the parent claimed that no income was received from a consulting position obtained after departing from a closely-held *1345 family corporation, the parent had accepted draws and advances of commissions from the corporation and had voluntarily chosen to continue in the consulting position despite the lack of adequate remuneration. See also Bielecki v. Bielecki, 505 So.2d 546 (Fla. 3d DCA) (holding that, where "deferred profits" arrangement was scheme by former husband to conceal part of his income from family-owned business, $500 per month received as "deferred profits" should have been taken into consideration in determining his ability to pay child support), review dismissed, 511 So.2d 297 (Fla. 1987). In essence, a parent cannot avoid paying child support mandated by statute by being undercompensated from a closely-held family corporation. The wife was the lowest paid of all the corporate officers and was paid less than two vice presidents. Under these circumstances, it was reasonable to impute to the wife a net monthly salary of $4,609.60.
Nevertheless, having determined that the trial court properly ascertained the net income to be imputed to the parties, we conclude that the court should have applied the 1993 version of the guidelines to the case because the proceeding was pending when the 1993 version became effective. See Ch. 93-208, Laws of Fla.; Whight v. Whight, 635 So.2d 135 (Fla. 1st DCA 1994) (holding § 61.30, Fla. Stat. (1993), remedial child support guidelines statute which amended basis for modification of child support, applicable to proceedings which were pending on effective date of amendment); cf. Pelton v. Pelton, 617 So.2d 714 (Fla. 1st DCA 1992); Reed v. Reed, 597 So.2d 936 (Fla. 1st DCA 1992); Fogg v. Southeast Bank, N.A., 473 So.2d 1352 (Fla. 4th DCA 1985). As a matter of law, the trial court was required to apply the 1993 version of the statute to the case sub judice. Whight, 635 So.2d at 138. Under the 1993 version, the minimum child support need for two children, where the parties' combined net income is $7,109.60 per month, would presumptively be $1,897. § 61.30(6), Fla. Stat. (1993). Here, the father's share was determined to be 35.16% of the total; therefore, he should have been required to pay $663.95, not $454. § 61.30(10), Fla. Stat. (1993). We note that the trial court could have varied the guidelines amount by plus or minus five percent or by a greater amount if a written finding or a specific finding on the record was given. The trial court, however, made no such finding despite the fact that the variance in this case was more than five percent. Accordingly, this case must be remanded to the trial court to enter an order for the husband to pay the presumptive statutory amount per month, plus or minus five percent, or to enter written findings explaining why ordering payment of the guidelines amount would be unjust or inappropriate. Winters v. Katseralis, 623 So.2d 613 (Fla. 2d DCA 1993); Glover v. Glover, 601 So.2d 231 (Fla. 1st DCA 1992); § 61.30(1)(a), Fla. Stat. (1993).

EQUITABLE DISTRIBUTION OF ASSETS
In attempting to distribute the parties' property, the trial court designated some of the assets as the husband's and some as the wife's. The trial court also designated some cash account assets and liabilities, and their respective valuations, as marital or non-marital assets. The trial court, however, did not identify all of the property as either marital or non-marital assets, in derogation of section 61.075(3) of the Florida Statutes. § 61.075(3)(a)-(c), Fla. Stat. (1993). This statute required the trial judge to include specific values and marital/non-marital designations in its equitable distribution of the parties' assets. Because the court failed to do so, we are unable to determine which assets and liabilities the court awarded to one party or the other as a non-marital asset, and which it awarded to the parties as part of its equitable distribution. Even though the trial court properly awarded some of the assets to the husband and some to the wife, we return the case for the trial court to reconsider its distribution scheme since the distribution of marital assets should be considered as part of an overall scheme and should not be reviewed piecemeal. Hamlet v. Hamlet, 583 So.2d 654 (Fla. 1991). Accordingly, we remand this case with instructions for the trial court to comply with the statute to enable meaningful appellate review. Kennedy v. Kennedy, 622 So.2d 1033 (Fla. 5th DCA 1993), review dismissed, 641 So.2d 408 *1346 (Fla. 1994); Bussey v. Bussey, 611 So.2d 1354 (Fla. 5th DCA 1993); Plyler v. Plyler, 622 So.2d 573 (Fla. 5th DCA 1993).
As to the other issues raised, we conclude that the trial court committed no error. We specifically note, however, that the trial court properly imposed a standard visitation order instead of a stipulated visitation schedule. A trial court may decline to follow an agreement between the parties concerning a child. Holland v. Holland, 458 So.2d 81 (Fla. 5th DCA 1984). Here, it appears that the court was acting in the best interests of the children when it used a standard visitation schedule that was appropriate for the children's ages and circumstances. In doing so, the trial court did not abuse its discretion. Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980); cf. Wattles v. Wattles, 631 So.2d 349 (Fla. 5th DCA 1994) (holding that trial court abused its discretion in entering visitation order that was not appropriate to age and circumstances of minor child).
AFFIRMED in part; VACATED in part; and REMANDED.
GOSHORN, J., concurs.
W. SHARP, J., concurs and concurs specially, with opinion in which GOSHORN, J., concurs.
W. SHARP, Judge, concurring specially.
Although I agree in general with the majority opinion in this case, I think we should give the trial court and the parties below more direction on remand. We are remanding to have the trial court reconsider its equitable distribution scheme mainly because the trial court failed to designate what assets were marital as opposed to non-marital, and because it failed to value those assets. The trial court also failed to make any findings[1] to justify its awards. That also should be remedied.
Of concern to me is the fact that this case has been tied up on appeal since November 1993. In that interim, the existence of some of the assets and their values may have dramatically changed. For example, various real properties were ordered to be sold and the proceeds split without providing for credits on carrying charges to the party who made the payments. Some of the assets were cash accounts, which may no longer exist. Some items were personal property, which may have been sold, traded in, or greatly depreciated in value. And, the liabilities for which each party was allocated responsibility may or may not have been paid. In sum, I think the trial court should be permitted to take evidence concerning the current status of marital assets and liabilities,[2] to insure that its new plan of equitable distribution based on three-year-old values and assets is feasible, as a practical matter, at this time.
GOSHORN, J., concurs.
NOTES
[1] Miller Bearings is a closely held corporation. The wife's father is the chairman of the board and chief executive officer, and he owns 96% of the stock. The other four percent of the stock is owned by a vice president of the company.
[2] The senior vice president of Miller Bearings earns $6,158 per month.
[1] § 61.075(3), Fla. Stat. (1993).
[2] Trial courts have routinely been permitted to adduce new or additional evidence if the record is insufficient. Scott v. Scott, 643 So.2d 1124, 1126 (Fla. 4th DCA 1994); Livingston v. Livingston, 633 So.2d 1162, 1164 (Fla. 1st DCA 1994); Thibault v. Thibault, 632 So.2d 261 (Fla. 1st DCA 1994); Randolph v. Randolph, 626 So.2d 342 (Fla. 5th DCA 1993); Dozier v. Dozier, 606 So.2d 477 (Fla. 1st DCA 1992); Glover v. Glover, 601 So.2d 231 (Fla. 1st DCA 1992); Moon v. Moon, 594 So.2d 819 (Fla. 1st DCA 1992); Huntley v. Huntley, 578 So.2d 890 (Fla. 1st DCA 1991); Turner v. Turner, 529 So.2d 1138 (Fla. 1st DCA 1988). See also Fried v. Fried, 375 So.2d 46 (Fla. 2d DCA 1979) (divisible divorce where court retained jurisdiction to determine property and alimony at later date).