705 So.2d 682 (1998)
Jana M. BROWN, Appellant,
v.
Ira SMITH, Appellee.
No. 97-0590.
District Court of Appeal of Florida, Fourth District.
January 28, 1998.
*683 Mark S. London of the Law Offices of Mark S. London, P.A., Hollywood, for appellant.
Donald Loughran, Coral Springs, for appellee.
RAMIREZ, JUAN, Jr., Associate Judge.
The appellant, Jana M. Brown, raises two issues on appeal, both of which warrant reversal. The trial court erred by failing to find the appellee, Ira Smith, guilty of criminal or civil contempt and by modifying the visitation arrangements beyond the scope of the pleadings.
The parties' marriage produced a son, born in May, 1989. They entered into a marital settlement agreement which was incorporated into the final judgment of dissolution of marriage. The agreement provided that the mother was to be the primary residential parent and would receive $100.00 a week in child support. The father had visitation rights every weekend and alternating holidays.
Mother filed a petition to modify visitation based on a substantial change in circumstances. At the time of the settlement agreement, the child was two years old and the mother had to work virtually every weekend. The child was now seven years old and attending school, and the mother felt that she had almost no "quality time" to spend with her son. Additionally, she had changed her work schedule so that she no longer worked weekends. She also alleged that the father was almost $20,000 in arrears in his child support obligation. She requested the court to enter an order to show cause why the father should not be held in indirect criminal contempt and for civil contempt based on his failure to pay child support. Despite two prior adjudications of contempt, the father had continued to pay child support sporadically. In March, 1993, the mother withdrew her motion for commitment after the father's family promised that they would provide support for the child. However, the child support payments continued only sporadically, if at all. In fact, the mother presented evidence that, unbeknownst to her, the father had collected welfare for two years, starting in June, 1993, which included Aid for Dependent Children. He did so by misrepresenting himself as the primary residential parent. The father allocated only a fraction of this money for child support.
In his defense, the father offered that at the time of the final judgment, he was earning over $100,000 a year, but shortly after the dissolution, he was terminated from his employment. Since then he had started two direct marketing companies, both of which had failed. He filed for bankruptcy and began suffering from a chronic back condition which adversely affected his earning capacity. In April, 1993, the father received public assistance until he had corrective back surgery in January, 1995. He has been living with his parents, who have paid part of the child care expenses.
After an evidentiary hearing, the trial court found the father to be $19,090.25 in arrears in his child support obligation but *684 was "not prepared to institute the drastic relief of indirect criminal contempt at this time." The trial court stated that "based upon the testimony the Court has already heard, there is serious doubt that there would be a finding of an ability to pay and a knowing and willful disregard of the Final Judgment, both of which are necessary to hold the Former Husband in indirect criminal contempt."

CRIMINAL CONTEMPT
In Bowen v. Bowen, 471 So.2d 1274 (Fla.1985), the Florida Supreme Court explained the purpose and standards for civil and criminal contempt in family law proceedings. The purpose of a civil contempt proceeding is to obtain compliance with a court order. Because incarceration is utilized solely to obtain compliance, it must be used only when the contemnor has the ability to comply. However, criminal contempt is punitive in nature and requires special procedures. "Criminal contempt proceedings are utilized to vindicate the authority of the court or to punish for an intentional violation of an order of the court." Id. at 1277. Such a special procedure gives "potential criminal contemnors the same constitutional due process protections afforded criminal defendants in more typical criminal proceedings." Id.; LeNeve v. Navarro, 565 So.2d 836, 837 (Fla. 4th DCA 1990).
Criminal contempt proceedings are appropriate where the party in default has continually and willfully neglected court-ordered support obligations, or has affirmatively divested him or herself of assets and property. See Bowen at 1279. "An indirect criminal contempt proceeding must fully comply with rule 3.840, Florida Rules of Criminal Procedure, and defendants are entitled to the appropriate due process protections, which may include court-appointed counsel. In such a proceeding, the movant must prove, beyond a reasonable doubt, that the defendant willfully violated the court order." Id.; see also Pompey v. Cochran, 685 So.2d 1007, 1013 (Fla. 4th DCA 1997) (a court may sentence a criminal contemnor to imprisonment for a definite term or to pay a punitive fine, but these criminal sanctions may not be imposed unless a contemnor has been afforded the same constitutional due process protections to which criminal defendants are entitled, including the right to be represented by counsel, the requirement that the offense be proved beyond a reasonable doubt, and the privilege against self-incrimination); Washington v. Burk, 704 So.2d 540 (Fla. 5th DCA 1997) (speedy trial rule applied to indirect criminal contempt proceeding against defendant), rev. granted, 695 So.2d 698 (Fla.1997); Kersh v. State Farm Fire & Cas. Co., 686 So.2d 782 (Fla. 3d DCA 1997) (the defendant must be afforded notice of the charge, the specifics as to what conduct constituted the alleged contempt, and a hearing).
In the instant case, the trial court refused to initiate an indirect criminal contempt proceeding by issuing an order to show cause. The reason expressed was that the father lacked the present ability to pay. In so holding, the trial court erroneously confused civil contempt with criminal contempt. The Bowen opinion clearly envisioned the possibility of finding a defendant guilty of indirect criminal contempt even in the absence of a present ability to pay. See Robbins v. Robbins, 429 So.2d 424, 431 (Fla. 3d DCA 1983) (a lack of ability to pay turned the civil contempt proceedings into criminal contempt). We remand with instructions to issue a rule to show cause pursuant to rule 3.840 of the Florida Rules of Criminal Procedure.

CIVIL CONTEMPT
The trial court correctly refused to order incarceration of the father based on the finding that he lacked the present ability to pay the arrears in child support. See Bowen, at 1277 ("Because incarceration is utilized solely to obtain compliance, it must be used only when the contemnor has the ability to comply. This ability to comply is the contemnor's `key to his cell.'") But the trial court here merely awarded the wife a money judgment. Even though the law has given matrimonial judgments a higher status *685 than other judgment creditors,[1] the trial court should have found the father in contempt and established a realistic payment plan for arrearages concurrent with regular support payments. As the Bowen court stated, although incarceration cannot be used to seek compliance when the contemnor does not have the ability to purge the contempt, the court does have available other means to obtain compliance. Id. at 1279. The supreme court suggested that the trial judge may direct the offending party to seek employment through Florida State Employment Services and to report weekly until employment is secured; the court may request the employment service to report to the court on the status of the job search. Other tools include a writ of garnishment, an income deduction order, and the suspension of the offending party's driver's license. A finding of civil contempt without incarceration may be a useful tool in obtaining compliance with a child support order. We remand with instructions that the trial court enter an order finding the appellee in civil contempt and consider what options short of incarceration can ensure compliance.

VISITATION
In response to the mother's petition to modify child visitation by providing her with weekend visitation every other weekend, the court "granted" her motion by ordering the "standard" visitation schedule for Palm Beach County. This gives the father eight weeks custody, which is almost the entire summer vacation. At the hearing, the parties never raised the subject of summer custody, nor did the court hear any evidence regarding such visitation. The expert psychologist simply testified that it was in the best interest of the minor child to spend alternating weekends with the mother, but expressed no opinion as to summer visitation.
The trial court erred by adjudicating an issue that was neither presented by the pleadings nor litigated by the parties. See Johnson v. Johnson, 546 So.2d 97 (Fla. 4th DCA 1989); Antonio v. Antonio, 493 So.2d 53 (Fla. 2d DCA 1986); Brady v. Jones, 491 So.2d 1272 (Fla. 2d DCA 1986) (holding that the mother's fundamental due process rights were violated where the issue of terminating visitation and telephone contact was neither presented by the pleadings nor litigated by the parties). Here, the testimony was restricted to the mother's request for alternating weekend visitation. The father simply objected to the fact that his visitation would be cut in half without any other visitation to make up for the missed time. However, he never requested summer visitation. The court does not possess the same discretion to modify child custody orders as it did in entering the original decree. Wages v. Wages, 660 So.2d 797 (Fla. 5th DCA 1995).
Furthermore, a standard visitation schedule may only be used if the court can specifically conclude that it is in the best interests of the minor and that it is appropriate for the child's age and circumstances. Kelley v. Kelley, 656 So.2d 1343, 1346 (Fla. 5th DCA 1995). A visitation schedule is not necessarily appropriate just because it is "standard." Wattles v. Wattles, 631 So.2d 349, 350 (Fla. 5th DCA 1994); see also Owen v. Owen, 633 So.2d 1156 (Fla. 5th DCA 1994). We remand to the trial court to reconsider visitation in light of the child's best interests in view of his age and circumstances.
REVERSED AND REMANDED.
GUNTHER and SHAHOOD, JJ., concur.
NOTES
[1] For example, alimony and child support payments are not dischargeable in bankruptcy (11 U.S.C. § 523(a)(5)).