715 So.2d 1042 (1998)
Nivia LASCAIBAR, Appellant,
v.
Albert A. LASCAIBAR, Appellee.
No. 97-2386.
District Court of Appeal of Florida, Third District.
July 29, 1998.
Spiegelman and Spiegelman and Robert Spiegelman, Miami, for appellant.
Albert A. Lascaibar, in pro. per.
Before NESBITT, GODERICH and SHEVIN, JJ.
NESBITT, Judge.
Nivia Lascaibar argues that a trial court's post judgment Order of Contempt and Commitment and Final Judgment failed to take sufficient action to secure needed support arrearages from her former husband. We agree.
The trial court specifically found Albert Lascaibar had "willfully, intentionally and contumaciously failed and refused to comply" with this court's earlier opinion, see Lascaibar v. Lascaibar, 658 So.2d 170 (Fla. 3d DCA 1995)(herein Lascaibar I), as well as the subsequent orders of the trial court to enforce the mandate on this matter.
In Lascaibar I, 658 So.2d at 170-71, we concluded:
The judgment below approving the general master's report with respect to child support is reversed because (1) while income was correctly imputed to the father because of the unrebutted showing that he had deliberately abandoned a lucrative optometric practice apparently solely in order to deprive his wife and children of his *1043 ability to support them, ... the amount attributed, $50,000.00 per annum, was far less than the sum indisputably shown to have been earned by the husband during the course of the marriage. Accordingly, we increase the amount of attributed income to $80,000.00 per annum.
... We also find clear error in the master's and trial court's refusal to consider applications to require the husband to make support payments and to hold him in contempt for not doing so.
Thereafter, in its order of May, 1996 the trial judge computed arrearages of $46,871.96 as due and owing since 1993, and set up a schedule for repayment.
Despite this father's clear ability to comply with this schedule, approximately fourteen months later, in the order herein appealed, the trial court found Mr. Lascaibar had failed to comply with its orders and calculated support then due in the amount of $56,106.30. The trial judge sentenced Mr. Lascaibar to serve 30 days in the Dade County Jail for contempt, but gave him the opportunity to purge himself by paying $5,000 within 60 days, which Mr. Lascaibar paid[1], leaving Mrs. Lascaibar with a money judgment for the $51,106.30 balance.
At the hearing on Mrs. Lascaibar's motion to enforce the orders in place, Mr. Lascaibar would not account for a number of missing checks and would not provide documentation for what he maintained was his financial condition. He was living comfortably with a new spouse, but asserted he had no money. In the face of $51,106.30 still due and needed, Mrs. Lascaibar argued for additional action.
A trial judge has an arsenal of mechanisms, both criminal and civil, for enforcement of orders for support arrearages, even after a money judgment has been entered. Brown v. Smith, 705 So.2d 682 (Fla. 4th DCA 1998) as well as Bowen v. Bowen, 471 So.2d 1274 (Fla.1985) clearly envision finding a defendant guilty of indirect criminal contempt even in the absence of a present ability to pay. See Robbins v. Robbins, 429 So.2d 424, 431 (Fla. 3d DCA 1983) (a lack of ability to pay turned the civil contempt proceedings into criminal contempt). As observed in Brown, 705 So.2d at 682:
Criminal contempt proceedings are appropriate where the party in default has continually and willfully neglected court-ordered support obligations, or has affirmatively divested him or herself of assets and property. See Bowen at 1279.
See also Johnson v. Felton, 655 So.2d 1286, 1287 (Fla. 3d DCA 1995)(holding in an appropriate case, the trial court may employ contempt as a punitive sanction, accomplished by initiating proceedings for indirect criminal contempt under Florida Rule of Criminal Procedure 3.840.) Under the instant facts, indirect criminal contempt proceedings should have been initiated.
Also, with regard to a finding of civil contempt, as observed in Brown, 705 So.2d at 682:
... the trial judge may direct the offending party to seek employment through Florida State Employment Services and to report weekly until employment is secured; the court may request the employment service to report to the court on the status of the job search. Other tools include a writ of garnishment, an income deduction order, and the suspension of the offending party's driver's license.
Here, in addition to the $5,000 contempt amount ordered, faced with this father's continued failure to honor his court-ordered commitment and the court's finding of willful noncompliance, the options outlined are but limited suggestions.
The procedural merger of actions at law in suits in equity has tended to blur the distinction. Nonetheless, the marvelous ability of a court of equity in fashioning a decree to vindicate a party's rights as well as its ability to enforce such decree remain a vital distinction. In the enforcement of a judgment entered in equity, a trial judge is limited only by due process, in scope of its process, and because liberty is the core value of the republic, in civil contemnor's ability to purge himself of contempt by compliance. Other than those restraints, the ability of the trial court to enforce its decree is fettered only by a lack of imagination.
*1044 In the utilization of incarceration as a tool as outlined above, the trial judge need not concern himself with the idea that incarceration would render it impossible for the contemptor to earn a livelihood. If that is a concern, the trial court should fashion its enforcement order so that the contemnor is free to pursue a livelihood, and otherwise to sleep or remain at a county stockade if not otherwise engaged. Moreover, once a contempt order has expired, an aggrieved is again privileged to pursue contempt in accordance with the orderly administration of due process.
Furthermore, we remind these parents that an obligor parent cannot escape his responsibilities by leaving the jurisdiction. Court orders will be enforced by the Full Faith and Credit Act, principles of comity, and by use of the Uniform Interstate Family Support Act.[2]
A circuit judge possesses great power, which usually should remain in reserve. The record shows, however, that this was the appropriate case to put that power to use. Accordingly, we remand with instructions to issue a rule to show cause pursuant to Florida Rules of Criminal Procedure 3.840, and consider other remedies as well.
NOTES
[1] This was not the first time that the Mr. Lascaibar had been found in contempt and then purged himself on the eve of incarceration. In fact, this was an established pattern of behavior.
[2] See Chapter 88, Florida Statutes (1997).