961 So.2d 349 (2007)
Elena WHITBY a/k/a Jennifer Ross, Appellant,
v.
INFINITY RADIO, INC., a Delaware corporation, f/k/a CBS Radio, Inc., et al., Appellees.
No. 4D06-660.
District Court of Appeal of Florida, Fourth District.
June 6, 2007.
Rehearing Denied August 8, 2007.
*351 David L. Gorman of David L. Gorman, P.A., North Palm Beach, for appellant.
Alan Rosenthal, Natalie J. Carlos and Tenikka L. Cunningham of Adorno & Yoss LLP, Miami, for appellee Infinity Radio, Inc.
SHAHOOD, J.
Elena Whitby, a/k/a Jennifer Ross ("Whitby"), timely appeals the Final Order of Further Contempt and Sanctions based on the violation of a non-compete covenant of an employment agreement. We affirm.
Whitby was employed as a radio personality by WRMF-FM 97.9 (WRMF) in West Palm Beach for fifteen years beginning in 1980. On May 18, 1995, Whitby entered into an employment agreement with OmniAmerica Group (the "1995 Agreement"), the owner of WEAT-FM 104.3 ("WEAT"). The 1995 Agreement contained a non-compete covenant which prohibited Whitby, for twelve months after leaving WEAT, from appearing on radio or television and from working for any competing business within 125 miles of WEAT.
Whitby started broadcasting at WEAT on September 25, 1995. OmniAmerica sold WEAT to Chancellor Broadcasting, which in turn sold the station to American Radio Systems in 1996. American Radio then merged with CBS Radio, Inc. in 1998, which has since changed its name to Infinity Radio, Inc. ("Infinity").
In February 1999, Whitby and Infinity signed an "Amendment to Letter Agreement" which contained language providing that the 1995 Agreement remained in full force and effect and was ratified and confirmed. Also in February 1999, Whitby became the lead host of WEAT's morning show following the death of WEAT's existing lead host, Kevin Kitchens. WEAT's morning show became the highest rated show in the market.
The 1995 Agreement was set to expire on September 25, 2000. In August 2000, Russ Morley (Morley), an employee and on-air personality for James Crystal Holdings, Inc., met with Whitby to discuss the possibility of Whitby working as an on-air personality for WRMF, a direct competitor of WEAT.
On September 21, 2000, James Crystal Holdings, Inc. executed a three-year employment agreement with Whitby for her to broadcast the WRMF morning show. On September 25, 2000, when the 1995 Agreement terminated, Whitby ceased her employment with WEAT. Later that day, she began broadcasting on WRMF.
On September 26, 2000, Infinity filed both a Complaint for Injunctive Relief and an Emergency Motion for Temporary Injunction against Whitby to enforce the non-compete provision in the 1995 Agreement. After a hearing on October 4, 2000, the court denied the motion for temporary injunction. Infinity appealed this ruling to this court. This court, on February 21, 2001, reversed the denial of a temporary injunction and remanded with instructions to enter a temporary injunction. See Infinity Radio, Inc. v. Whitby, 780 So.2d 248 (Fla. 4th DCA 2001). Whitby petitioned the Florida Supreme Court for discretionary review of this decision, which was denied. See Whitby v. Infinity Radio, Inc., 796 So.2d 539 (Fla.2001).
On remand, the trial court entered a temporary injunction enjoining Whitby from being employed by WRMF in any *352 capacity for a one-year period from April 27, 2001 through April 27, 2002.
On May 1, 2001, Infinity filed an Emergency Motion to Enforce Temporary Injunction. The motion stated that Whitby had made a personal appearance at a publicity event on behalf of WRMF in violation of the court's April 27, 2001 order of temporary injunction. The trial court entered an order finding Whitby to be in indirect civil contempt and imposed a fine of $100,000 on July 30, 2001. The order specifically provided that "in order that Whitby may purge the contempt, payment of the fine is suspended on the condition that Whitby commits no further violations of the Temporary Injunction."
On November 19, 2003, Infinity moved to liquidate the $100,000 sanction against Whitby, alleging that payments she received from WRMF during the injunction period, which were characterized as a loan, violated the injunction. Hearings were held before a successor judge on March 9, 2004 and March 18, 2004. On July 7, 2004, the court entered an order finding a further violation of the injunction. The court found that Whitby had knowingly and intentionally committed further violations of the Temporary Injunction by accepting regular, periodic payments from WRMF through the term of the injunction. As a result, the court ordered Whitby to pay the sum of $100,000 into the Court Registry. Whitby appealed to this court and the lower court stayed payment of the sanctions. On appeal, this court affirmed per curiam without an opinion on June 15, 2005. See Whitby v. Infinity Radio, Inc., 907 So.2d 543 (Fla. 4th DCA 2005).
While the appeal was pending, the case went to trial on the merits of the breach of contract claim. A jury trial was held from March 28, 2005 through April 8, 2005. At the end of the trial, the jury found that Whitby breached her contract, and as such, was liable to Infinity for $1 million in compensatory damages. The jury found further that each of the three WRMF owners tortiously interfered with the Whitby-Infinity contract, and awarded Infinity $1 million from each of them. Finally, the jury awarded $13.2 million in punitive damages against one of WRMF's owners. The trial court remitted the total compensatory damages to $2.3 million, to be divided among appellants pro rata ($575,000 each). Infinity moved for entry of final judgment for damages based upon the jury's verdict as reduced by the trial court. On September 2, 2005, the trial court entered final judgment against Whitby. Whitby and the WRMF owners appealed the final judgment to this court. On January 24, 2007, this court issued an opinion reversing and remanding the trial court's final judgment based on the issues of liability and damages. See Whitby v. Infinity Radio, Inc., 951 So.2d 890 (Fla. 4th DCA 2007).
At a December 2, 2005 hearing, Whitby claimed that (1) she did not have the present ability to pay the $100,000 contempt fine, and (2) she believed one of the owners of WRMF would indemnify her pursuant to an indemnification clause in her employment agreement with WRMF. At the conclusion of the hearing, the trial court took the order under advisement and would call the parties with the ruling.
On December 9, 2005, the trial court conducted a telephonic hearing to announce the ruling. The trial court orally announced its finding that Whitby had the ability to pay the Order Imposing Sanctions after weighing her assets and liabilities and that she was in contempt of court for not complying with the order. The trial court initially stated that final judgment should be entered in favor of Palm Beach County, the recipient of the injury on the court, for $100,000 and that Whitby's *353 failure to comply with the judgment would subject her to more strenuous sanctions.
A hearing was held on February 2, 2006, to address the proposed final judgment against Whitby for her contempt in violating the Order Imposing Sanctions. Upon further reflection, the trial court ruled that payment of the civil contempt fine should be made to the trust account of Infinity's counsel until resolution of the attorney's fees and costs issue, and not to Palm Beach County.
During a February 6, 2006, hearing the trial court concluded that an order should be entered in favor of Infinity as originally contemplated by the court's first Civil Contempt Order. On February 8, 2006, the trial court entered its Order of Further Contempt against Whitby, directing her to pay $100,000 either directly to Infinity or its counsel's trust account within thirty days of the date of the Order. This appeal followed.
Jurisdiction to Enter a Judgment Based Upon the July 7, 2004 Order Finding a Further Violation of the Temporary Injunction
Whitby's first argument on appeal is that the trial court lost continuing jurisdiction to enter further orders enforcing the interlocutory civil contempt order because entry of Final Judgment on the initial complaint divested the court of jurisdiction to enter further orders. We disagree and find there was jurisdiction.
By motion from Infinity, the trial court found Whitby to be in violation of its Temporary Injunction. During a hearing on the motion, Infinity explained, "we do not seek compensatory damages as part of the relief for violation of the injunction." Rather, Infinity asked for a "coercive fine." The court entered an order finding Whitby to be in indirect civil contempt and imposed a coercive fine of $100,000, with the ability to purge so long as there was no future violation. After the period of injunction, Infinity again moved to enforce contempt against Whitby due to her violation during the injunction period. The trial court found Whitby to be in violation and ordered her to pay $100,000. Whitby appealed and the court stayed payment pending the appeal. On appeal, this court affirmed. Thereafter, final judgment was entered in the original action. The final judgment did not specifically reserve jurisdiction over the contempt order. Infinity then moved for enforcement of the contempt order and the trial court ordered the fine to be paid.
Because the contempt order did have a purge provision, was instituted by the offended party, and had the purpose of coercing the offending party into complying with the court order, it was civil in nature. See Pugliese v. Pugliese, 347 So.2d 422, 424 (Fla.1977); Johnson v. Bednar, 573 So.2d 822 (Fla.1991) (Civil contempt is used to coerce an offending party into complying with a court order rather than to punish the offending party for a failure to comply with a court order.).
Being civil in nature, the contempt order is part of the original cause. See S. Dade Farms, Inc. v. Peters, 88 So.2d 891, 899 (Fla.1956). Final judgment on the original cause would normally divest jurisdiction on pretrial matters if it is not specifically reserved. See T.D. v. K.D., 747 So.2d 456, 458 n. 2 (Fla. 4th DCA 1999). However, courts retain ancillary jurisdiction over contempt matters determined before final judgment. Tobkin v. State, 777 So.2d 1160, 1163 (Fla. 4th DCA 2001) ("[A] voluntary dismissal does not divest the court of jurisdiction to conclude ancillary matters involved in the case such as outstanding and unresolved motions for attorney's fees and costs, and similar issues. *354 These ancillary matters would include unresolved contempt of court matters."); Cooter v. Hartmarx Corp., 496 U.S. 384, 396, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990) ("A court may make an adjudication of contempt and impose a contempt sanction even after the action in which the contempt arose has been terminated.").
Here, Infinity moved for contempt and the trial court granted the motion, which was affirmed on appeal before final judgment in the original action was entered. Only issues regarding Whitby's ability to pay and to whom, ancillary matters, remained after final judgment. As a result, the court retained jurisdiction to enforce its prior ruling. See also Dep't of Children & Family Servs. v. J.B., 898 So.2d 980, 982 (Fla. 5th DCA 2005) (jurisdiction found for lower court to enter a written order awarding attorney's fees after the case was closed because the lower court orally awarded fees prior to closing the case, thus retaining jurisdiction to enter a written order consistent with its previous oral pronouncement).
Ability to Pay the $100,000 Contempt Fine
Whitby's second point on appeal is that there was a complete lack of competent substantial evidence to support the trial court's finding that she had the ability to pay the $100,000 contempt fine. We disagree and find that the trial court had competent, substantial evidence to find an ability to pay.
Before a court can enforce an order of contempt, it must first determine, by competent substantial evidence, that the contemnor has the present ability to pay from some available asset. Buchanan v. Buchanan, 932 So.2d 270 (Fla. 2d DCA 2005); Politz v. Booth, 910 So.2d 397, 398 (Fla. 4th DCA 2005). For a coercive fine, the court "must consider the offending party's financial resources and the seriousness of the burden on that particular party." Johnson, 573 So.2d at 824 (citing United States v. United Mine Workers, 330 U.S. 258, 304, 67 S.Ct. 677, 91 L.Ed. 884 (1947)). All sums from whatever source available to the contemnor-obligor must be considered by the trial court to determine their ability to pay the purge amount. Sibley v. Sibley, 833 So.2d 847, 849 (Fla. 3d DCA 2002). "A court is required to consider all assets and property interests of the obligor, including cash as well as real property and business interests." Koll v. Koll, 812 So.2d 529, 533 (Fla. 4th DCA 2002).
An appellate court will not disturb a trial court's factual findings when supported by competent substantial evidence. Milian v. State, 764 So.2d 860, 861 (Fla. 4th DCA 2000).
An evidentiary hearing was held on December 2, 2005, to determine Whitby's ability to pay the $100,000 fine. At the hearing, Whitby testified that she sold her home for $1,225,000 on December 1, 2005, $164,000 of which was not going to be used to purchase a new home. She owns a 2003 motor home jointly with her husband. In 2005 she bought a $33,000 Honda Accord in her own name and a utility vehicle called a John Deere Gator for $8,000. In 2005, she bought a $6,000 pony and paid $650 a month to stable the pony, but recently put it up at her girlfriend's house where it is stabled for free. Her current annual compensation is about $245,000. In addition she receives $1,000 a month from commercial voice-overs. She has a bank account in her own name for $5,000.
The above provided the court with competent, substantial evidence to find Whitby had the ability to pay the contempt fine. Furthermore, Whitby has acknowledged *355 payment of the entirety of the fine to the Adorno & Yoss, LLP Trust Account.
Notice of the Contempt Proceedings
Whitby's third argument on appeal is that the only issue set to be addressed at the February 6, 2006 hearing was in whose favor judgment would be entered. It was error for the trial court to make a finding of contempt in the absence of any motion seeking that relief or notice that it would be addressed during the hearing. We find that Whitby received adequate notice of the contempt proceedings.
A person facing civil contempt sanctions is entitled to notice and an opportunity to be heard. Akridge v. Crow, 903 So.2d 346, 350 (Fla. 2d DCA 2005).
On July 7, 2004, the trial court entered an order finding that Whitby violated the temporary injunction and that she must pay the sum of $100,000. Whitby appealed the order to this court. This court affirmed without an opinion on June 15, 2005. On September 26, 2005, Infinity filed a Motion to Set Hearing on Notice of Contempt due to the fact that Whitby has not complied with the July 7, 2004 order. The trial court entered an Order Setting Hearing on Infinity's Notice of Contempt for December 2, 2005. At the conclusion of the December 2nd hearing, the judge advised the parties that she was taking the matter under advisement and would call the parties with the ruling. In a telephonic hearing on December 9, 2005, the trial court orally announced its finding that Whitby had the ability to pay the Order Imposing Sanctions and that she was in contempt of court for not complying with the order. Infinity volunteered to draft the proposed judgment.
A hearing was held on February 2, 2006, to address the proposed final judgment against Whitby for her contempt in violating the Order Imposing Sanctions. Upon further reflection, the trial court ruled that payment of the civil contempt fine should be made to the trust account of Infinity's counsel until resolution of the attorney's fees and costs issue, and not to Palm Beach County. Whitby objected and the trial court set another hearing to finalize her rulings.
The hearing was conducted on February 6, 2006. The trial court concluded that an order should be entered in favor of Infinity as originally contemplated by the court's first Civil Contempt Order. On February 8, 2006, the trial court entered its Order of Further Contempt against Whitby, directing her to pay $100,000 either directly to Infinity or its counsel's trust account within thirty days of the date of the Order.
The hearings after the December 9th oral announcement did not discuss further contempt, only to whom Whitby should pay the original $100,000 contempt fine. Whitby received full notice of the contempt sanctions.
Incarceration as a Penalty for Failing to Pay a Civil Contempt Fine
Whitby's final argument on appeal is that it was improper for the trial court to assist Infinity and its lawyers in collecting the contempt fine by the threat of incarceration. We disagree.
The Florida Supreme Court explained in Parisi v. Broward County, 769 So.2d 359, 365 (Fla.2000), the available sanctions to enforce a contempt order:
While there is a broad arsenal of coercive civil contempt sanctions available to the trial court, including "incarceration, garnishment of wages, additional employment, the filing of reports, additional fines, the delivery of certain assets, the revocation of a driver's license," to be a valid civil contempt sanction the *356 contempt order must include a purge provision.
Id. at 365 (quoting Gregory v. Rice, 727 So.2d 251, 254 (Fla.1999)). Furthermore, in In re Tierney, 328 So.2d 40 (Fla. 4th DCA 1976), the court distinguished punishment, which includes imprisonment, between the two types of contempt:
If the character and purpose of the punishment is Coercive, i.e., if it is designed for the benefit of other parties and Conditional imprisonment is imposed for the obvious purpose of compelling the contemnor to obey an order, then the contempt may be classified as `civil'. In such instance the contemnor carries `the keys of (his) prison in (his) own pockets.'
Id. at 46 (citations omitted); see also Brown v. Smith, 705 So.2d 682, 684 (Fla. 4th DCA 1998) (citing Bowen v. Bowen, 471 So.2d 1274 (Fla.1985) ("The purpose of a civil contempt proceeding is to obtain compliance with a court order. Because incarceration is utilized solely to obtain compliance, it must be used only when the contemnor has the ability to comply.")).
Here, there was a finding that Whitby had the financial ability to pay the civil contempt fine; therefore, incarceration is a proper tool to enforce compliance.
Affirmed.
GROSS and TAYLOR, JJ., concur.