# Third District Court of Appeal

## State of Florida

Opinion filed January 31, 2024.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D22-699
Lower Tribunal No. 17-17110
_____

**Q.G.S. Development, Inc., etc., et al.,**
Appellants,

vs.

**National Lining Systems, Inc., etc.,**
Appellee.

An appeal from the Circuit Court for Miami-Dade County, Mark Blumstein, Judge.

Marlowe McNabb Machnik, P.A., Scott W. Machnik, and Jacqueline J. Brown (Tampa), for appellants.

Crabtree & Auslander, Charles M. Auslander, John G. Crabtree, Brian C. Tackenberg, Ferencik Libanoff Brandt Bustamante & Goldstein, P.A., Robert E. Ferencik, and Ira L. Libanoff (Plantation), for appellee.

Before FERNANDEZ, SCALES, and MILLER, JJ.

MILLER, J.

This dispute arises out of the renovation of the Riviera Country Club (the "Club") golf course. Q.G.S. Development, Inc. ("QGS"), the general contractor, and Berkley Regional Insurance Company, the surety, appeal from a final judgment awarding damages to appellee, National Lining Systems, Inc. ("NLS"), the subcontractor, for unpaid invoices following a protracted nonjury trial. Appellants assert a myriad of errors on appeal, most of which implicate factual and evidentiary considerations. We affirm in all respects and write only to reiterate the familiar principle that although a reviewing court might have reached a different result in the first instance, it is not entitled to reweigh or reevaluate conflicting evidence. See State v. Burke, 531 So. 2d 416, 418 (Fla. 4th DCA 1988).

**BACKGROUND**

In 2015, the Riviera Country Club hired QGS to construct an irrigation lake on its property and refurbish the existing eighteen-hole golf course. QGS, in turn, retained NLS to install a polyvinyl chloride ("PVC") reservoir liner on the bottom of the lake. Berkley issued a bond to guarantee subcontractor payment for the project.

The parties exchanged purchase orders, proposals, and project plans and specifications, along with two quality control manuals. Under the terms of the agreement, QGS was to construct the lake and prepare the subgrade,

2

while NLS would install a protective textile layer over the subgrade, followed by the reservoir liner. The liner would be secured by a sand ballast system. QGS was solely responsible for dewatering operations.

Despite expressing concerns regarding the site conditions, NLS installed the liner. QGS filled the lake and implemented the sand ballast system.

QGS failed to pay the last invoice for the liner installation, and, mere months later, portions of the liner began to lift. QGS contacted NLS for remedial assistance, but, before NLS arrived on site, a QGS employee cut part of the liner.

NLS effectuated repairs, but, soon after, the Club noticed the water elevation in the lake was rapidly decreasing. A survey procured by QGS revealed multiple leaks in the liner. QGS drained the lake, removed the sand ballast, and isolated the leaks. NLS again performed repairs and propounded invoices, but QGS refused to tender payment.

NLS filed suit against QGS and Berkley in the circuit court seeking damages for breach of contract and performance under the payment bond, or, alternatively, quantum meruit or unjust enrichment relief. QGS counterclaimed for breach of contract and negligence.

3

The case proceeded to a bench trial, at the conclusion of which the judge issued a lengthy and comprehensive order and entered judgment for the unpaid invoices in favor of NLS. As relevant to this appeal, the court attributed the lining failure to QGS's ineffective dewatering operations and improper installation of the sand ballast. The court further rejected the counterclaim outright, finding that, given untenable time constraints and other extraneous circumstances, NLS performed within industry standards. A motion for rehearing proved futile, and the instant appeal ensued.

## LEGAL ANALYSIS

It is axiomatic that, in a bench trial, the trial judge possesses the "superior vantage point to see and hear the witnesses and judge their credibility." Guzman v. State, 721 So. 2d 1155, 1159 (Fla. 1998), cert. denied, 526 U.S. 1102 (1999). Consequently, "the factual findings of the judge are entitled to the weight of a jury verdict." Petion v. State, 48 So. 3d 726, 730 (Fla. 2010). The appellate court is only authorized to reverse if such findings are not supported by competent, substantial evidence. See Citibank, N.A. v. Olsak, 208 So. 3d 227, 229 (Fla. 3d DCA 2016).

In the instant case, appellants assail the conclusion that improper dewatering operations precipitated the breach of the liner, along with the corollary finding that QGS unilaterally cut the liner as soon as the first

infirmity materialized, leaving NLS with no choice other than to use concededly "unorthodox" techniques to effectuate the repairs. In doing so, appellants argue they presented a more cogent and logical theory of recovery.

Although he equivocated at times during his testimony, QGS's principal confirmed that a QGS employee cut into the liner while NLS was in transit to the project site, and NLS adduced evidence that the unilateral cut doomed the liner to failure.

Further, the record is replete with evidence concerning the impact of dewatering issues on the project. To identify but a few: (1) NLS was reluctant to perform its contractual tasks in wet conditions; (2) the Club deemed dewatering necessary to ensure proper bonding; (3) a consultant hired by the Club concluded the liner had been damaged by an upswell of groundwater; and (4) QGS admitted that dewatering issues plagued the renovation.

Other evidence of record, of course, arguably supported the proposition that NLS contributed to the failures by way of its repair methodology. That may well be true, but the scope of our review does not entail examining evidence that potentially supports a different result. Instead, we must only determine whether the findings of the trial court are

supported by competent, substantial evidence.  See <u>Whitby v. Infinity Radio, Inc.</u>, 961 So. 2d 349, 354 (Fla. 4th DCA 2007) ("An appellate court will not disturb a trial court's factual findings when supported by competent substantial evidence.").  In this vein, "the appellate court should interpret the record and all reasonable inferences and deductions capable of being drawn therefrom in the light most favorable to sustain [the trial court's] conclusions." <u>DeLalio v. Food Palace, Inc.</u>, 330 So. 2d 835, 837 (Fla. 3d DCA 1976); <u>see also</u> <u>Shaw v. Shaw</u>, 334 So. 2d 13, 16 (Fla. 1976) ("It is not the function of the appellate court to substitute its judgment for that of the trial court through re-evaluation of the testimony and evidence from the record on appeal before it."); <u>Markham v. Fogg</u>, 458 So. 2d 1122, 1126 (Fla. 1984) (holding appellate court should not substitute its judgment for that of trier of fact as long as there is competent substantial evidence); <u>Marrone v. Mia. Nat'l Bank</u>, 507 So. 2d 652, 653 (Fla. 3d DCA 1987) (trial court must evaluate and weigh conflicting testimony after observing the credibility of witness); <u>Dreyfuss v. Dreyfuss</u>, 701 So. 2d 437, 440 (Fla. 3d DCA 1997) (concluding appellate court has duty to affirm trial court findings supported by competent, substantial evidence); <u>Zerquera v. Centennial Homeowners' Ass'n, Inc.</u>, 721 So. 2d 751, 752 (Fla. 3d DCA 1998) (finding in bench trial, judge's findings of fact will not be disturbed unless totally unsupported by competent and substantial

evidence); <u>Lahodik v. Lahodik</u>, 969 So. 2d 533, 535 (Fla. 1st DCA 2007) ("It is well-established that the appellate court does not re-weigh the evidence or the credibility of witnesses."); <u>Griffin Indus., LLC v. Dixie Southland Corp.</u>, 162 So. 3d 1062, 1066 (Fla. 4th DCA 2015) ("It is not the role of appellate courts to re-weigh evidence presented to trial courts, to assess whether there is contradictory evidence in the record which supports a different conclusion than that reached by the trial court, to retry the case, or to substitute its judgment for the trial court's on factual matters."). And here, our review of the record yields testimonial support for each of the challenged findings. Accordingly, we are dutybound to affirm the judgment under review.[1]

Affirmed.

---

[1] We summarily reject the remaining assertions of error. <u>See</u> <u>Bryan v. Bryan</u>, 930 So. 2d 693, 696 (Fla. 3d DCA 2006) (citing <u>Perlow v. Berg-Perlow</u>, 875 So. 2d 383, 390 n. 5 (Fla. 2004)) (rejecting contended <u>Perlow</u> violation where "the trial court actively participated in the final hearing by asking numerous questions[,] . . . t[aking] notes[, and] . . . allow[ing] both parties to submit proposed final judgments"); <u>Everett Painting Co., Inc. v. Padula & Wadsworth Constr., Inc.</u>, 856 So. 2d 1059, 1061 (Fla. 4th DCA 2003) ("A payment bond is a separate agreement from the contract and an inability to proceed against [the c]ontractor does not necessarily prevent recovery on the bond."); <u>Alvarez v. All Star Boxing, Inc.</u>, 258 So. 3d 508, 512 (Fla. 3d DCA 2018) ("Damages . . . may be valued based on either (1) the market value of the services; or (2) the value of the services to the party . . . enriched."); <u>Wiederhold v. Wiederhold</u>, 696 So. 2d 923, 924 (Fla. 4th DCA 1997) ("[T]he trial court can reject [evidence if] it . . . offer[s] a reasonable explanation for doing so.").